**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DENNIS COOK,

                    Plaintiff

        v.                                        C-1-02-073

CITY OF NORWOOD, et al.,

                    Defendants.

**<u>ORDER</u>**

        This matter is before the Court upon motions to strike witnesses or, in the alternative, for

a continuance filed by defendants City of Norwood (Norwood), Joseph J. Hochbein, and Kevin

Cross (docs. 43, 45, 46), motions for summary judgment filed by defendants Cross, Norwood,

Hochbein, and Gary Hubbard (docs. 47, 48, 52, 54), plaintiff's motion for leave to add a witness

(doc. 51), and plaintiff's motion for continuance to file exhibits (doc. 60). The defendants have

filed proposed findings of fact and conclusions of law in support of their motions, which plaintiff

has highlighted (doc. 61).

**I. Procedural history**

        Plaintiff filed his complaint in this action on February 1, 2002 (doc. 1). Plaintiff named as

defendants Norwood, which is a municipal corporation organized pursuant to Title 7 of the Ohio

Revised Code; Gary Hubbard, who was the Director of Public Service for Norwood at all times

relevant to the complaint; Kevin Cross, who was the Superintendent of Norwood Public Works

at all times pertinent to this complaint; and Joseph J. Hochbein, who was the elected Mayor of

the City of Norwood at all times pertinent to the Complaint.

1

This case arises out of plaintiff's employment by the City of Norwood beginning January 16, 1975. Plaintiff contends that he was employed in the capacities of laborer, truck driver, sweeper operator, Leadman of the street crew, heavy equipment operator, truck driver in the parks division, and truck driver and laborer in the street division. Plaintiff claims that defendants harassed him, discriminated against him, and subjected him to threats of physical violence, racial epithets, religious insults and vulgarities. Plaintiff contends that he repeatedly complained to defendants and to Norwood officials concerning the harassment, but his complaints were ignored and the harassment increased. Plaintiff contends that it was defendants' practice and policy to force older employees such as plaintiff from their higher paid positions and to replace them with younger employees and to restrict the ability of older employees to assume higher paying positions.

Plaintiff brings the following claims for relief: age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., based on plaintiff's alleged constructive discharge from his employment at the age of 44 (Count I); age discrimination in violation of the ADEA based on various policies and practices outlined in the complaint, the use of arbitrary and subjective standards for filling vacancies, and toleration of a hostile work environment that forced older men to resign positions or denied promotions to older men, which caused a significant adverse and disparate discriminatory impact upon individuals over the age of forty, including plaintiff (Count II); discrimination based on race, color, religion, sex, disability and age in violation of O.R.C. § 4112.02 arising from plaintiff's constructive discharge and actions taken against plaintiff with regard to the tenure, terms, conditions or privileges of his employment (Count III); sexual harassment-hostile work environment based on

use of profanity, vulgarity and demeaning name calling on a daily basis by plaintiff's co-workers and superiors (Count IV); negligent hiring based on defendants' failure to exercise reasonable care in the supervision of the conduct of its employees and the operations of its business to comply with applicable laws and standards of conduct and to screen and hire capable and qualified individuals to serve as supervisors (Count V); intentional infliction of emotional distress (Count VI); violation of 42 U.S.C. § 1983 (Count VII); violation of 42 U.S.C. § 1985 based on defendants' acts of conspiring to deny plaintiff the equal protection of the laws and to injure plaintiff or his property for lawfully enforcing or attempting to enforce his rights and the rights of other older employees to equal protection of the laws (Count VIII); violation of 42 U.S.C. § 1986 based on defendants' failure to prevent the commission of the wrongs defendants conspired to commit (Count IX); and violation of the Americans with Disabilities Act (ADA) based on a physical or mental impairment and including failure to treat plaintiff's medical information as confidential and requiring plaintiff submit to psychological and medical examinations.

## II. Undisputed facts

The undisputed facts are as follows:

1. Plaintiff Dennis Cook began his employment with defendant City of Norwood on January 16, 1975.

2. In the fall of 1995, plaintiff supported the election of defendant Hochbein as Mayor of the City of Norwood.

3. Hochbein hired defendant Hubbard for the position of Director of Public Service and defendant Cross for the position of Superintendent of Public Works.

4.    Plaintiff has a bipolar disorder.

5.    In May of 1996, plaintiff was referred by William J. Miller, Director of Safety for the City of Norwood, to Dr. Monica Jackson for an evaluation. Miller also referred plaintiff to Dr. John Scroder for a physical evaluation.

6.    Dr. Jackson concluded that plaintiff was unfit to fulfill his duties as a heavy equipment operator for Norwood. Dr. Jackson recommended that plaintiff not return to work until he could deal appropriately with his emotions, and she suggested "psychological intervention in the form of regular psychotherapy".

7.    Plaintiff was placed on administrative leave following the evaluations and was on leave from May 1996 until he returned to work on June 11, 1996.

8.    On May 15, 1998, plaintiff filed a charge of discrimination, Charge No. 645, with the Equal Employment Opportunity Commission (EEOC) asserting a cause of action based on age discrimination. Plaintiff alleged that he had been replaced as Leadman because of his age.

9.    On May 15, 1998, plaintiff filed Charge No. 646, which was dismissed.

10.    On June 16, 1998, plaintiff filed an Amended Charge 645 asserting a cause of action based upon race, religion, age and disability discrimination. In the charge, plaintiff complained that he had been denied a promotion to the position of Leadman on April 13, 1998, and that Hubbard had informed him that it was because plaintiff had refused to operate the backhoe, which was an essential function of the job. Plaintiff denied that he had refused to operate the backhoe and stated that the Leadman had never been required to operate the backhoe in the past. Plaintiff also stated that other workers mocked him

4

and co-workers who prayed and discussed religion among themselves during breaks and that he was constantly harassed because his son-in-law is black. Plaintiff also stated that on or about May 6, 1998, he learned that Hubbard had passed out a psychologist's report on plaintiff to plaintiff's co-workers.

11.     On June 16, 1998, plaintiff filed Charge No. 717, alleging retaliation for the filing of Charge No. 645. Plaintiff claimed that he had filed a charge of discrimination on May 15, 1998, and that on April 20, 1998, in retaliation for filing that charge, he was given a letter stating that his commercial driving license was incorrect and that his license had a restriction which prevented him from operating vehicles with air brakes. Plaintiff stated that he was removed from operating the 472 street sweeper. Plaintiff claimed that he was treated differently than other employees in that he was not allowed to take a city truck to his driver's test to obtain a new license or to take the test while on the clock. Plaintiff stated that he was aware of employees who had never been asked to present a license and who were operating motor vehicles.

12.     On June 16, 1998, plaintiff filed Charge No. 718, which was dismissed.

13.     The charges on which plaintiff may base his claims in this action are Amended Charge No. 645 and Charge No. 717, both of which were filed on June 16, 1998.

14.     On or about May 12, 1999, plaintiff injured his neck while operating a weed eater.

15.     Plaintiff filed a claim on May 12, 1999, with the Bureau of Workers' Compensation (BWC) for "cervical strain" arising out of his neck injury.

16.     Plaintiff subsequently amended his BWC claim to include "severe depression" and "bipolar disorder". His attempts to add these claims were rejected by the BWC. Plaintiff subsequently filed a complaint in state court against BWC and the City of Norwood challenging the rejection of his attempt to amend the claim to include "severe depression" and "bipolar disorder".

17.     On July 16, 1999, plaintiff applied to the Ohio Public Employees Retirement System (PERS) for a determination that he was permanently disabled due to his physical condition, which was set forth in his application as "neck-back-shoulder-low back".

18.     On October 25, 1999, PERS rejected plaintiff's application for permanent disability based on his physical condition.

19.     On February 23, 2000, PERS approved plaintiff's application for permanent disability based on his mental condition.

20.     The determination by PERS that plaintiff was permanently disabled was retroactively effective from June 1, 1999.

21.     Plaintiff received disability retirement benefits from PERS retroactive to June 1, 1999, and plaintiff has been on disability retirement since June 1, 1999.

22.     Plaintiff's charges filed with the EEOC do not contain allegations of constructive discharge.

### III. Motion for summary judgment

Defendants move for summary judgment on all claims against them. Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

### IV. Opinion

### A. ADEA claim

Defendants argue that plaintiff cannot establish the essential elements of his claim of

discrimination in violation of the ADEA because plaintiff failed to allege a constructive discharge in the claims he filed with the EEOC; plaintiff cannot establish a prima facie case of age discrimination because he was not discharged, but rather his employment ended as a result of his physical and mental condition, and he was unable to perform his job satisfactorily following his injury on May 12, 1999, as revealed in the medical reports filed with PERS; and plaintiff cannot establish age discrimination when the alleged motivation for eliminating older employees was to cut costs. Defendants further contend that plaintiff cannot establish a hostile environment claim under the ADEA because hostility or a clash of personalities cannot support such a claim.

Defendants also argue that plaintiff cannot establish the essential elements of a disparate impact claim under the ADEA because it is doubtful whether that theory of liability is cognizable under the ADEA, and even if it were, plaintiff cannot offer statistical evidence to establish his claim under a disparate impact theory.

In response, plaintiff alleges that he has satisfied the administrative prerequisites for his constructive discharge claim because the claim is a natural result of the retaliation charge which plaintiff filed. Plaintiff also notes that he was not represented by counsel when he filed his charges with the EEOC.

Plaintiff further alleges that he can establish age discrimination through both direct and circumstantial evidence. Plaintiff alleges that (1) he is a member of the protected class; (2) he was qualified for the positions he sought while in Norwood's employment and he was performing his duties, and defendants' argument that he was not meeting his employer's legitimate expectations is not well-taken because Norwood had no legitimate expectations during the relevant time period; (3) he suffered an adverse employment decision in that he was denied

promotions and vacations; he suffered a decrease in his wages by being denied promotions; he was refused permission to work while younger men were permitted to work; he was retaliated against for filing an EEOC charge and assisting other individuals who filed EEOC charges or grievances based on discrimination; he was denied the opportunity to have grievances heard by defendants; he was disciplined for fictitious charges; he was forced into positions defendants knew would jeopardize his health; he was ordered to operate the most difficult equipment as opposed to younger men with less seniority; he was denied bathroom breaks; he was targeted by defendants to be terminated from employment; Norwood attorneys calculated how to build a case against plaintiff and fire him for paranoia; and plaintiff was eventually terminated from his position as a result of his protected activity; and (4) plaintiff was treated less favorably than others because of his protected characteristics and his age.

Plaintiff alleges in support of his disparate impact claim that there is evidence that defendants engaged in concerted action in order to remove older men from promoted positions and replace them with younger men. Plaintiff contends that he can establish a disparate impact claim as he will offer statistical evidence which will demonstrate a pattern and practice of defendants to systematically discriminate against older workers.

In order to commence a civil action under the ADEA, an individual must file a charge with the EEOC. 29 U.S.C. § 626(d). Federal courts do not have subject matter jurisdiction to hear a Title VII or an ADEA claim "unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." **_Strouss v._** **_Michigan Dept. of Corrections,_** 250 F.3d 336, 342 (6th Cir. 2001)(addressing Title VII claims); **_Sherman v. Chrysler Corp_**. 47 Fed.Appx. 716, 720-721, 2002 WL 31074591,*3 (6th Cir.

2002)(not published in Federal Reporter). Charges filed with the EEOC "should be liberally construed to encompass all charges 'reasonably expected to grow out of the charge of discrimination.'" *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992) (quotations omitted). Generally, retaliation claims based on conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge. *Strouss,* 250 F.3d at 342 (citing *Duggins v. Steak 'N Shake, Inc*., 195 F.3d 828, 832-33 (6th Cir.1999)). However, retaliation claims based on conduct that occurred before the filing of the EEOC charge must be included in that charge. *Id*. (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir.1991)).

The Court finds that defendants are entitled to summary judgment on plaintiff's ADEA claim. Plaintiff failed to file an administrative claim for constructive discharge based on his age, and such claim could not reasonably be expected to grow out of the charges plaintiff did file with the EEOC. The claims plaintiff brought before the EEOC would not have prompted an investigation into plaintiff's alleged constructive discharge, which occurred over a year after the incidents which were the subject of his EEOC charges. Accordingly, the Court lacks subject matter jurisdiction over plaintiff's ADEA claim based on his alleged constructive discharge, and defendants are therefore entitled to summary judgment on this claim.

Defendants are likewise entitled to summary judgment on plaintiff's ADEA claim premised on a disparate impact theory. Under a "disparate impact" theory of discrimination, a plaintiff "need not show that a defendant intended to discriminate, but must instead prove that a particular employment practice, although neutral on its face, has produced a significant adverse effect on a protected group to which the plaintiff belongs." *Kovacevich v. Kent State Univ*., 224 F.3d 806, 830 (6th Cir. 2000). In order to prevail on such a claim, the plaintiff must establish a

10

prima facie case "by identifying and challenging a specific employment practice, and then show[ing] an 'adverse effect' by offering statistical evidence 'of a kind or degree sufficient to show that the practice in question has caused the'" alleged adverse effect. *Id*. (quoting ***Scales v. J.C. Bradford & Co.***, 925 F.2d 901, 908 (6th Cir.1991)).

Plaintiff's claim of age discrimination based on disparate impact could not reasonably be expected to grow out of his EEOC charges. Moreover, plaintiff has not come forward with sufficient evidence at the summary judgment stage to show the existence of a genuine issue of material fact with regard to this claim. Plaintiff asserts that he will offer statistical evidence which will demonstrate a pattern and practice of defendants to systematically discriminate against older workers, but the burden is on plaintiff to produce such evidence in response to defendants' summary judgment motions in order to avoid summary judgment. Plaintiff has failed to do so. Accordingly, his disparate impact ADEA claim must be dismissed.

### B. Harassment/Hostile environment

Defendants claim that plaintiff cannot establish the essential elements of his sexual harassment claim under Title VII. Defendants assert that plaintiff has failed to meet Title VII's administrative prerequisites for this claim by omitting to assert sex as a basis for his discrimination charges filed with the EEOC, and there is no evidence to suggest that any conduct directed toward plaintiff was based on his sex. In support of his claim, plaintiff alleges that there is evidence that defendants Hubbard and Cross permitted various activities at work and Cross desired to obtain information on how to proceed on the issue of discipline for plaintiff before issuing any decision on a disciplinary hearing. Plaintiff also states that Cross issued a letter on August 14, 1998, specifically stating that plaintiff was being suspended for filing false EEOC

charges, workers compensation claims, and unfair labor practices.

Initially, the Court finds that it lacks subject matter over plaintiff's sexual harassment claim because plaintiff failed to allege sexual harassment in his EEOC charges, and such a claim could not reasonably be expected to grow out of the charges he brought. Moreover, plaintiff has not come forward with evidence to support a sexual harassment/hostile environment claim. To establish a prima facie case of gender hostile environment, a plaintiff must establish that he was subjected to unwelcome harassment and that the harassment was based on his gender. See *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999). While plaintiff has certainly alleged sufficient facts to show that he was subjected to unwelcome harassment, he has not alleged any facts to show that the harassment was based on his gender. Accordingly, defendants are entitled to summary judgment on this claim.

### C. Section 1983 claims

Defendants allege that plaintiff cannot establish the essential elements of a § 1983 claim because the claim is barred by the applicable two-year period of limitations and plaintiff has failed to assert a right, privilege, or immunity of which he was deprived. Defendants also assert that plaintiff cannot pursue an ADEA claim, an ADA claim, or a Title VII retaliation claim under § 1983 because those anti-discrimination statutes provide the exclusive remedy for such claims. Defendant Norwood also asserts that plaintiff has failed to allege an unconstitutional policy or custom as required to impose municipal liability, and defendants Hochbein and Cross claim that they are entitled to qualified immunity on plaintiff's § 1983 claim.

Plaintiff alleges that he was denied the following rights: his right to due process as a result of defendants' trumped up charges and failure to grant him a hearing on his grievances; his

right to freedom of association with his fellow workers; his right to freedom of speech; his right to equal protection, i.e., denial of access to the courts and intimidation of witnesses; and his right to freedom of religion. Plaintiff alleges that he was terminated in violation of his substantive and procedural due process rights and that Norwood violated his constitutionally protected right to be employed.

Plaintiff contends that he filed his § 1983 claim within two years of the date of his termination and that the acts of which he complains continued throughout his employment and up to that date. Plaintiff contends that defendants tried to cover up the truth and that many of the acts complained of were not known to him until September 2000 and June 2001. Plaintiff argues that if the Court considers the date of plaintiff's separation from Norwood's employment to be June 1, 1999, the effective date of plaintiff's permanent disability, the Court should consider applying the doctrine of equitable tolling to plaintiff's claims. In support of his argument, plaintiff contends that more than seventeen months after he filed his EEOC charge, Norwood successfully attempted to conciliate the charge without plaintiff's participation, and plaintiff was thereby bypassed in the settlement process. Plaintiff claims that Norwood's actions prolonged by another two years plaintiff's right to sue letter. Plaintiff also contends that defendants can demonstrate no prejudice as a result of equitable tolling. He contends that in determining whether to apply the equitable tolling doctrine, the Court should consider defendants' acts of intimidating witnesses to prevent them from telling the truth, defendants' failure to disclose its actions and be truthful in the settlement process, and plaintiff's hospitalization and medical condition.

The statute of limitations for a claim under 42 U.S.C. § 1983 is two years from the date

the cause of action accrues. ***Browning v. Pendleton,*** 869 F.2d 989, 992 (6th Cir. 1989). Plaintiff

filed the complaint in this action on February 1, 2002. Plaintiff went on leave from his

employment with Norwood and did not work there after May 12, 1999, more than two years

before he filed the complaint in this action. Although plaintiff alleges the denial of a litany of

constitutional rights, he has not sufficiently alleged the denial of a federal statutory or

constitutional right which occurred after he took leave from his employment in May of 1999.

Plaintiff was aware of much of the treatment of which he complains during the time he was still

reporting to work and therefore could have brought his § 1983 claim within two years of the date

he last worked. As to his denial of due process claim, plaintiff was aware that he had been denied

a hearing on his grievances prior to the date of Leo Osterday's September 29, 2000 affidavit on

which plaintiff relies in support of this claim. Finally, although plaintiff contends that

Norwood's attempts to mediate his claims before the EEOC without plaintiff's involvement

delayed plaintiff in bringing his charge, that alleged course of action by Norwood does not

excuse plaintiff from timely filing his § 1983 claim. The Court finds no other basis for equitably

tolling the statute of limitations. For these reasons, plaintiff's § 1983 claims are time-barred.

### D. 42 U.S.C. §§ 1985 and 1986

Defendants argue that plaintiff cannot establish the essential elements of his claims for

violations of 42 U.S.C. § 1985 and § 1986. Defendants argue that the claims are barred by the

applicable statutes of limitations. Defendants further allege that plaintiff's § 1985 claim is

actually a claim for retaliation which must be brought under Title VII and that plaintiff has failed

to allege racial or class-based discriminatory animus. Defendants also allege that plaintiff may

not establish a conspiracy under § 1985 pursuant to the "intracorporate conspiracy doctrine".

Plaintiff asserts that his claims under §§ 1985 and 1986 involve defendants' alleged actions to prevent witnesses from coming forward and testifying and to thereby deny plaintiff his right to seek redress in the courts. In support of his claims, plaintiff relies on the affidavits of Joseph Lacinak, Leo Osterday and Melissa Andler.

The elements of a claim under § 1985(3) are: "(1) a conspiracy; (2) for purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Conklin v. Lovely,* 834 F.2d 543, 548 (6th Cir. 1987)(citing *United Brotherhood of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828-29 (1983)).

Title 42 U.S.C. § 1986 provides that,

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; . . . But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

Plaintiff has failed to come forward with evidence to raise a genuine issue of fact as to whether he was denied his right of access to the courts in violation of § 1985. The only reference to court proceedings contained in the affidavits on which plaintiff relies is a statement by Lacinak that defendants Hubbard and Cross instructed employees of the Norwood Public Works not to testify truthfully concerning the matters that occurred there in any administrative or judicial proceeding. This allegation, accepted as true, does not establish a denial of plaintiff's

15

right of access to the courts or the violation of any other right plaintiff seeks to redress under §

1985. Accordingly, defendants are entitled to summary judgment on plaintiff's claims under §§

1985 and 1986.

## E. ADA

Defendants allege that plaintiff cannot establish the essential elements of his disability

discrimination claim under either the ADA or O.R.C. § 4112. Defendants assert that plaintiff has

failed to establish the administrative prerequisites for this claim because he did not file an EEOC

charge within 180 days after the only discriminatory act alleged,, i.e., Hubbard's distributing a

psychologist's report on plaintiff to his co-workers in 1996. Defendants also contend that the

ADA permits an employer to require a medical examination to determine qualifications for the

job and for the health and safety of employees. Defendants further argue that plaintiff cannot

establish his claim under a direct evidence analysis because he cannot show that he could

perform the job with reasonable accommodation or that he requested any such accommodation,

that he was discharged from his employment, or that he was "otherwise qualified" for the

position. Defendants also contend that plaintiff cannot establish his case indirectly because he

cannot establish that he suffered an adverse employment decision.

Plaintiff alleges that Norwood limited, segregated or classified him in a way that

adversely affected his opportunities or status as an employee because of his disability. Plaintiff

specifically alleges that Norwood violated the ADA by writing up plaintiff for no legitimate

purpose, harassing plaintiff, disclosing plaintiff's condition to his fellow employees, placing

plaintiff on administrative leave, removing plaintiff from the operation of the street sweeper

without supporting medical evidence, and requiring repeated psychological examinations of

16

plaintiff and others who filed EEOC complaints.

The ADA prohibits an employer from discriminating against a "qualified individual with a disability" because of that individual's disability.  42 U.S.C. § 12112(a). O.R.C. § 4112.02 makes it an unlawful discriminatory practice "For any employer, because of the . . . disability . . . of any person, to . . . discharge without just cause . . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." The essential elements of a claim under the ADA and § 4112.02 are the same, so that the case law regarding claims brought under the ADA applies equally to claims brought under the Ohio statute. ***Hoffman v. Fidelity Brokerage Services, Inc.,*** 959 F. Supp. 452, 457 n.1 (S.D. Ohio 1997)(Weber, J.).

If plaintiff seeks to establish disability discrimination indirectly without direct proof of discrimination, he may establish a prima facie case of discrimination by showing that: "1) [he] is disabled; 2) otherwise qualified for the position with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." ***Monette,*** 90 F.3d at 1186. The employer must then offer a legitimate reason for its action. ***Id.*** If the employer does so, plaintiff must introduce evidence showing that the proffered reason is pretextual. ***Id.***

The exhaustion of administrative remedies is a condition precedent to an ADA action. ***Hoover v. Timkin Co.,*** 30 Fed. Appx. 511, 513 (6th Cir. 2002)(citations omitted). Under the ADA, allegations of discriminatory treatment in the workplace must be filed with the EEOC within 180 days "after the alleged unlawful employment practice", or within 300 days if the

17

individual has initially instituted proceedings with a state or local agency. 42 U.S.C. § 12117(a) and § 2000e-5(e)(1); *Cox v. City of Memphis,* 230 F.3d 199, 202 (6th Cir. 2000). Generally, the time for filing is "triggered at the time the alleged discriminatory act occurred." *Id.* (citing *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir. 1991)). The continuing violation doctrine is a narrow exception to the general rule. *Id.* The doctrine applies when there is an ongoing, continuous series of discriminatory acts. *Id.* (citing *Haithcock,* 958 F.2d at 677). In such a case, the series of acts may be challenged in their entirety so long as one of the discriminatory acts falls within the limitations period. *Id.*

Plaintiff presented a claim of disability discrimination in Amended Charge No. 645. Plaintiff checked the box for disability discrimination in that charge. Plaintiff claimed in the charge that he had been denied a promotion to the position of Leadman on the ground that he had refused to operate the backhoe, which was untrue. Plaintiff also alleged that on or about May 6, 1998, he learned that defendant Hubbard had passed out to plaintiff's co-workers a Service Fitness Report on plaintiff written by a psychologist.

In his summary judgment motion, plaintiff claims that defendants limited and classified plaintiff in a way that adversely affected his opportunities or status as an employee because of his disability. Plaintiff alleges that Norwood knew of his medical condition and attempted to worsen the condition by repeatedly writing plaintiff up for no legitimate purpose, harassing plaintiff, and disclosing his condition to fellow employees. Plaintiff also alleges that Norwood required repeated psychological examinations of him and others who filed administrative complaints and that the only purpose of the examinations was to harass plaintiff and serve as a subterfuge to terminate his employment. Plaintiff claims that defendants' acts of placing him on

18

administrative leave and removing him from operation of the street sweeper without any medical evidence to justify the removal violated the ADA.

The Court finds that plaintiff timely filed a charge alleging disability discrimination with the EEOC based on denial of a promotion so that such claim is not time-barred. Nor does it appear that plaintiff's claim of harassment based on a number of adverse actions allegedly taken against him on account of his psychological disability is time-barred in its entirety. Such claim could reasonably be expected to grow out of Amended Charge No. 645, particularly given plaintiff's assertion regarding defendants' dissemination of a psychologist's report to his co-workers. Moreover, although the Court finds that a continuing violation theory does not apply here since plaintiff premises his ADA claim on a series of discrete acts, it appears likely that at least some of the allegedly discriminatory acts of which plaintiff complains occurred within 180 days of the filing of the charge. Plaintiff may pursue his claim with respect to incidents occurring within the 180-day period.

The evidence presents genuine issues of fact as to whether defendants harassed plaintiff, denied him a promotion, and took other adverse action against him due to his known psychological disability. Accordingly, Norwood is not entitled to summary judgment on plaintiff's ADA claim. As to the individual defendants, plaintiff agrees that he cannot sue them in their individual capacity under the ADA, so that the ADA claims against these defendants in their individual capacity must be dismissed. The parties do not dispute, however, that plaintiff may sue the individual defendants in their official capacity under the ADA. Accordingly, the Court will not dismiss the ADA claim against the named defendants in their official capacity at this time.

**F. State law claims**

Defendants argue that the Court should not exercise supplemental jurisdiction over plaintiff's state law claims because the exercise of jurisdiction is not required in order to administer justice on those claims. Defendants also assert that these claims are part of a pending state law action which plaintiff filed in the Hamilton County, Ohio Court of Common Pleas (see doc. 48, exh. H). Defendants also contend that plaintiff cannot establish the essential elements of his claims of discrimination in violation of O.R.C. § 4112.02. Defendants argue that in addition to being unable to establish claims of discrimination based on disability, age and sex, plaintiff cannot establish a prima facie case of discrimination based on religion because he alleges only isolated and ambiguous comments. Finally, defendants claim that they are entitled to immunity on these claims pursuant to O.R.C. Ch. 2744.

Plaintiff requests the Court to retain jurisdiction over the state law claims because they are directly related to plaintiff's federal claims, the state court trial date has been continued at defendants' request, and defendants have not demonstrated how they will be prejudiced by trial of the claims before this Court or how plaintiff's claims are unrelated to the federal claims. Plaintiff further alleges that Norwood is not entitled to immunity under O.R.C. Ch. 2744 because by undertaking representation of the individual defendants, Norwood has implicitly conceded that the individual defendants' actions were within the scope of their employment, thereby rendering Norwood liable to suit under O.R.C. § 2744.09(B) and (C). Plaintiff also argues that the individual defendants are not immune from liability under Ch. 2744.

Title 28 U.S.C. § 1367(c) sets forth the circumstances under which the district courts may decline to exercise supplemental jurisdiction as follows: (1) the claim raises a novel or complex

issue of state law; (2) the claim substantially predominates over the claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; and (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. The Court finds that plaintiff's pursuit in state court of his state law age discrimination claim, his negligent hiring claim, and his intentional infliction of emotional distress claim constitutes a compelling reason to decline to exercise supplemental jurisdiction over those same claims in this Court.

The Court perceives no basis for declining to exercise supplemental jurisdiction over plaintiff's state law claims of discrimination on the basis of sex, race, color, or religion. Defendants are entitled to summary judgment on those claims because plaintiff has not come forward with any evidence to support a finding that he was discriminated against on any of these bases.

The Court likewise perceives no basis for declining to exercise supplemental jurisdiction over plaintiff's state law disability discrimination claim. For the reasons stated in connection with plaintiff's claim under the ADA, plaintiff is entitled to proceed with his disability discrimination claim absent a bar to the imposition of liability on Norwood or the individual defendants under O.R.C. Ch. 2744.

O.R.C. Ch. 2744 provides a three-tiered scheme which grants nearly absolute immunity to political subdivisions. *Engleman v. Cinti. Bd. of Education,* 2001 WL 705575 (Ohio App. 1 Dist. June 22, 2001). First, the general rule is that immunity shields a political subdivision from liability in the exercise of governmental or proprietary functions unless the injured party is entitled to rely on one of the exceptions specifically recognized by statute. *Id.* (citing *Nungester*

*v. Cincinnati,* 100 Ohio App.3d 561, 565, 654 N.E.2d 423, 426 (1995); see R.C. §
2744.02(A)(1). Second, R.C. § 2744.02(B) lists five express exceptions to the general grant of
immunity. ***Id.*** Finally, R.C. § 2744.03 enumerates defenses which may be asserted to avoid the
exception to liability provided under R.C. 2744.02(B). ***Id.*** These defenses come into play only if
the plaintiff can demonstrate that one of the exceptions to immunity applies. Ch. 2744 does not
apply to "[c]ivil actions by an employee. . . against his political subdivision relative to any
matter that arises out of the employment relationship between the employee and the political
subdivision" or "relative to wages, hours, conditions, or other terms of his employment". R.C. §
2744.09(B) and (C).

     As a general rule, the sovereign immunity of a political subdivision extends to its
employees. See R.C. 2744.03(A)(6). Employees may be held individually liable, however, upon
a showing of malice or wanton or reckless behavior pursuant to R.C. § 2744.03(A)(6)(b).

     Plaintiff may proceed against all defendants on his disability discrimination claim under
state law. Norwood is not entitled to immunity from liability on such claim pursuant to R.C.
2744.09(B) and (C). Moreover, the individual defendants have not established their immunity
from liability in either their individual or official capacities for disability discrimination under
state law. These defendants are not insulated from liability under Ch. 2744 to the extent they
acted with malice or in a wanton or reckless manner as plaintiff alleges. See R.C. §
2744.03(A)(6). Accordingly, defendants are not entitled to summary judgment on plaintiff's
disability discrimination claim asserted under state law.

**G. Damages claims**

Defendants allege that even if plaintiff prevails, he is not entitled to the damages that he seeks. The Court agrees that defendant Norwood is entitled to summary judgment on plaintiff's punitive damages claim under Ohio law in accordance with O.R.C. § 2744.05(A), which precludes an award of punitive or exemplary damages against a political subdivision. Plaintiff agrees he is not entitled to punitive damages against the individual defendants on his claims under the ADA.

Defendant Norwood seeks to limit the amount of compensatory damages plaintiff can recover for intentional discrimination under federal law in accordance with 42 U.S.C. § 1981a(b)(3), which limits amounts recoverable in accordance with the number of individuals an entity employs. The parties dispute the number of individuals Norwood employs, so that the Court cannot determine on summary judgment the corresponding limitation on damages.

Norwood also claims that plaintiff is not entitled to back pay or front pay on his disability discrimination claims because he has been permanently disabled since June 1, 1999. The Court finds it appropriate to defer until the time of trial a ruling on whether plaintiff's damages claims must be limited in light of PERS' determination of permanent disability and plaintiff's receipt of disability benefits.

**V. Motions to strike**

Defendants move the Court to strike ten witnesses designated by plaintiff, nine of whom were designated on the discovery cut-off date of March 31, 2003, and a tenth who was designated on April 3, 2003. Defendants complain that they will not have an opportunity to conduct discovery of these witnesses. In the event the Court does not strike the witnesses, defendants move the Court to extend the discovery cut-off date and the dispositive motion deadline and trial date so that discovery of these additional witnesses can be conducted.

Plaintiff opposes defendants' motion, claiming defendants have engaged in efforts to hide witnesses and the truth. Plaintiff has filed a motion to add the tenth witness.

The Court will not strike the nine witnesses and will grant plaintiff leave to add the tenth witness. Defendants will not be prejudiced by inclusion of these witnesses. The trial of this matter is scheduled for June, 2004, and the Court will extend the discovery deadline for an additional forty-five days to allow defendants an opportunity to complete any necessary discovery of these witnesses before trial.

## VI. Conclusion

Defendants' motions to strike are **DENIED.** Plaintiff's motion for leave to add a witness is **GRANTED.** The discovery deadline is extended to April 9, 2004, for the limited purpose of allowing defendants to conduct discovery of the additional witnesses. Plaintiff's motion for continuance to file exhibits to his response to the summary judgment motions is **DENIED** as moot as the exhibits have been made part of the record and the Court has considered them.

Defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part. The motions are **GRANTED** as to plaintiffs' claims for discrimination based on race, color, religion and sex, sexual harassment, violations of 42 U.S.C. §§ 1983, 1985 and 1986, punitive damages against Norwood, and punitive damages against the individual defendants on the ADA claims. Those claims are **DISMISSED** with prejudice. The motions are **DENIED** as to plaintiff's claims for disability discrimination under federal and state law, except insofar as plaintiff sues the individual defendants in their individual capacities under the ADA. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims for age discrimination, intentional infliction of emotional distress, and negligent hiring, and those claims are **DISMISSED** without prejudice.

This case will proceed to trial on the disability discrimination claims in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
Herman J. Weber, Senior Judge
 United States District Court

J:\HJWA\02-73msjdisc.wpd

25