West Broad Medical Ctr.  2575 W. Broad St.  Columbus, OH 43204    German Village Fmly Prac. 942 Parsons Ave. Columbus, OH 43206



(614) 621-3673
FAX (614) 621-9508
785 East Broad Street   Columbus, Ohio 43205

**Association for Psychotherapy, Inc.**

J. Nick Marzella, Ph.D
Stephen A. Douglas, Ph.D
John H. Mason, Ph.D.
Ellen Kay Douglas, Ph.D

July 16, 1998

Gary Hubbard, Director
Department of Public Service
City of Norwood
City Hall
4645 Montgomery Road
Norwood, Ohio 45212

      Re: Dennis Cook

Dear Director Hubbard:

Thank you for referring Dennis Cook to me for a fitness for duty evaluation. As you recall, Mr. Cook was scheduled for testing and evaluation at 11:30 AM on July 15, 1998. Upon presentation at the scheduled time, Mr. Cook asked to speak with me prior to filling out any informational material or release forms.

In speaking with Mr. Cook, he seemed quite agitated and asked if he could call his attorney to see whether or not he should sign a standard release of information. I provided him with a phone to do so, and Mr. Cook then refused to sign the release of information based on the advice of his attorney, Robert G. Kelly. Mr. Kelly faxed a letter to me which I have enclosed for your perusal.

Mr. Cook then stated that he thought this interview should be a confidential relationship, and I so informed him to the contrary. I explained to him the nature of this evaluation and that if he wished to proceed, I would gladly do so however, I would be providing only the City of Norwood with my report and that he was not entitled to such a report. I explained to Mr. Cook that his choices were to either continue with the testing and sign a release of information or to leave my office. He elected to leave, but then tried to get me to read specific portions, of what I assumed to be your union contract, referencing the City's ability to require him to have an examination with a licensed psychologist, physician, etc. I expressed to Mr. Cook my disinterest in the interpretation of this document and again offered him the opportunity to either leave my office or to go through with the evaluation. At that point, Mr. Cook left my office.

Page Two of Two
RE: Dennis Cook

I regretted not having an opportunity to evaluate him as he seemed to be psychologically interesting. If there is anything I can do to further explain this somewhat bizarre encounter, I would be happy to do so.

Regards,

*[signature]*

J. Nick Marzella, Ph.D.
Police Psychologist

JNM:ho

enclosed: letter from Atty. Kelly



August 17, 1998

(614) 621-3673
FAX (614) 621-9508
785 East Broad Street  Columbus, Ohio 43205

**Association for Psychotherapy, Inc.**

City of Norwood
Department of Public Safety
Mr. Gary Hubbard
4645 Montgomery Road
Norwood, Ohio 45212

J. Nick Marzella, Ph.D.
Stephen A. Douglas, Ph.D.
John H. Mason, Ph.D.
Ellen Kay Douglas, Ph.D.

Re: Dennis Cook

Dear Mr. Hubbard:

Please consider this letter as an addendum to my 08/05/98 psychological evaluation of Mr. Dennis Cook. Mr. Cook's symptomatology is such that it comprises a pervasive distrust and suspiciousness of others such that their motives are interpreted as malevolent. Additionally, he is preoccupied with unjustified doubts about the trustworthiness of associates, and reads hidden demeaning or threatening meaning into benign remarks or events. Additionally, he is reluctant to confide in others because of unwarranted fears that the information would be used maliciously against him and suspects, without sufficient basis, that others are exploiting and deceiving him. Subsequently, this constellation of symptomatology warrants the following diagnosis:

| | |
|---|---|
| AXIS I | R/O generalized anxiety disorder |
| AXIS II | 301.0 Paranoid personality disorder |
| AXIS III | None reported |
| AXIS IV | Vocational problems |
| AXIS V | GAF 60 |

I hope this information helps in your understanding of Mr. Cook's condition. Please feel free to contact me with any questions.

Sincerely,

J. Nick Marzella, Ph.D.
Psychologist

JNM:tmb

West Broad Medical Ctr.   2575 W. Broad St.   Columbus, OH 43204    German Village Fmly. Prac   942 Parsons Ave.  Columbus, OH 43206



(614) 621-3673
FAX (614) 621-9508
785 East Broad Street  Columbus, Ohio 43205

**Association for Psychotherapy, Inc.**

# FITNESS FOR DUTY EVALUATION

J. Nick Marzella, Ph.D
Stephen A. Douglas, Ph.D
John H. Mason, Ph.D
Ellen Kay Douglas, Ph.D

City of Norwood Ohio
RE: Mr. Dennis Cook
Date of Birth: 04/05/55
Date of Evaluation: 08/05/98

## OVERVIEW

Dennis Cook is a forty-three year old white male referred for a fitness for duty evaluation by Mr. Gary Hubbard, Director of Service for the City of Norwood, Ohio. In question was Mr. Cook's mental ability to perform his job and duties, and his ability to think rationally. Mr. Cook is essentially a laborer for the City of Norwood, and has on occasion operated a street sweeper, a backpe, and other heavy equipment.

Mr. Cook originally presented for psychological evaluation at this office on July 15, 1998. At that time, Mr. Cook seemed quite agitated, and essentially refused to sign a release of information based on the advice of his attorney. Mr. Cook was concerned about the nonconfidential nature of the relationship, and as indicated in my attached July 16, 1998 letter, I explained to Mr. Cook that he could either chose to participate in the evaluation or not. Mr. Cook elected to leave my office, and not continue with the evaluation.

Mr. Cook was again rescheduled for evaluation at this office on August 5, 1998. Prior to Mr. Cook's evaluation, I received a second fax from his attorney cautioning me as how to proceed. I have enclosed a copy of Attorney Kelly's letters to me as part of this evaluation packet. Nonetheless, Mr. Cook elected to appear for psychological inquiry on August 5, 1998. I again explained the nonconfidential nature of this evaluation to Mr. Cook, and further explained that he was not my client. He agreed to participate in the evaluation.

Mr. Cook's first presentation at this office was one that found him to be disheveled, highly agitated, and exhibiting rather tenacious and obsessive thinking. Additionally, he reeked of cigarette smoke and was generally unkempt. His presentation today was a bit more cleaned up as he was dressed casually in jeans and a T-shirt. The odor of cigarettes however, was still quite strong. He was quite guarded in presentation, and attempted to be nonrevealing throughout the interview process. His demeanor during test taking and interview was somewhat guarded and distractable. He had to take many breaks to use the bathroom, smoke a cigarette, and to apparently change the tape in his tape recorder as he was trying to disguise a covert taping of our interview.

Parsons Ave. Medical Ctr.   493 Parsons Ave.  Columbus, OH 43207    Master Family Practice   177 North High St.   Columbus, OH 43205

Page Two of Seven
RE: Dennis Cook

I asked Mr. Cook if he understood the reason for this evaluation, and his response was "not really". He then began to elaborate stating that "Hubbard wants to do whatever he can to cause me problems... it's retaliation from Gary Hubbard for some of the complaints I filed against him. I think it's a fishing expedition.... anything they can use to my detriment". Mr. Cook rambled on a bit about his perception of the reason for this evaluation, and went on to explain how he was a union representative until three months ago until "they took a vote and had me removed". He blamed Mr. Hubbard for this action. I offered these quotations because they are indicative of Mr. Cook's thought processes. He would began to elaborate on information and then would quickly become labile and "shift gears" and become anxious and less communicative.

I asked him to recount his history and he did so in a fairly clear and cogent manner. He states that he was born in Cincinnati and raised in Norwood all of his life except for the time he spent in the Service. He was the seventh of seven children, all boys, and states that he lost one brother at age fifty approximately three years ago. He also states that his mother had a miscarriage and he counts that as a loss of a sibling. He denies significant conflict among his siblings or parents during his pre-adolescent years. He states "they had me spoiled rotten". He denied incidents of physical, sexual, and/or emotional abuse. However, he states that his parents disciplined him via spankings with "a switch or belt".

His parents divorced when he was approximately fourteen years old, and Mr. Cook ended up quitting school and living with his father until he was old enough to join the Army at approximately age seventeen. When his parents divorced, he and his father moved to Deer Park, Ohio. Mr. Cook recounts that he didn't like Deer Park High School because "I didn't know nobody there". Mr. Cook's relationship with his mother was described as "OK". When quarried more deeply, he admitted being angry at her for leaving his father and stated that he "just dealt with it", and states that life "went on". After dropping out of school at age fifteen, he participated in the Job Corps until he was seventeen, and his father signed for him to join the Army. According to Mr. Cook, his father signed the "wrong papers" and inadvertently signed him up for the reserves. As Mr. Cook wanted a guaranteed Airborne School, as well as, another guaranteed MOS, he states that the recruiter redid the papers and Mr. Cook signed his father's name, and the recruiter notarized them. At that point, Mr. Cook did attend basic training at Fort Knox, Kentucky. During that time period, Mr. Cook's father died at the age of fifty-eight due to a heart attack. He states that "it broke my heart", and that he came home for his father's funeral and then went back to the service. Mr. Cook ended up serving only nine months of his military commitment as he reportedly contracted pneumonia, and was also denied the MOS he reportedly was guaranteed. He stated "they guaranteed me something they weren't going to give me", and he subsequently was honorably discharged from the U.S. Army.

At age eighteen, Mr. Cook returned to Norwood, Ohio where he enrolled in night school, and began working. He married a woman he had known for three months at age nineteen. He has a now twenty-two year old son from that marriage that lasted less than two years. He denies violence in that relationship, and states it broke up because "I guess we both committed adultery". He further elaborated that he was working, going to night school, and "we didn't know what we were doing".

Page Three of Seven
RE: Dennis Cook

Approximately six months to one year later, he remarried to his now current wife of twenty-one years. He knew his wife for approximately two or three years prior to marrying her, and when asked to describe the relationship, he stated "we're still together". This relationship has been fraught with arguments which would result in Mr. Cook's leaving home for days to weeks at a time. After his mother died approximately twelve years ago, Mr. Cook states that he got an apartment and lived in this apartment whenever he needed "space" in the relationship. Mr. Cook denied violence in the relationship with his wife. He states that they have had six children together in addition to each person having a child from a previous relationship. Additionally, Mr. Cook states he has two grandchildren, and that the ages of his children range from five to age twenty-three. His three oldest are on their own. Mr. Cook states that he is involved with his children and has good relationships with them.

Throughout the interview, Mr. Cook was generally anxious and uncomfortable. His speech was mostly controlled for the most part however, at times he would become more animated when discussing highly laden emotional issues. He struggled to maintain a level mood and appropriate affect. His thoughts were somewhat persecutory and paranoid in nature. He was well oriented times four. Memory was intact for recent, middle, and long range events. Judgement and insight were fair to poor. Intellectually, he functions in the normal range of intelligence. Mr. Cook denied suicidal and/or homicidal ideation both past and present. He denies specific fears, phobias, and habits. Sleep and appetite are reportedly normal. He smokes approximately two to three packs of cigarettes per day. Drug and alcohol use are noncontributory. Mental health treatment is positive for psychiatric intervention with Dr. Helms. Mr. Cook states he started Dr. Helms approximately three or four years ago for depression. By report, he saw Dr. Helms approximately one time every three or four months for medication evaluation only. He seemingly has never participated in psychotherapy although he did see a counselor who worked for Dr. Helms on one occasion. He is currently medicated on unspecified amounts of Depacote, Xanax, and Wellbutrin. He reportedly has been on varying dosages of these medications for the past three years. He further states that he was getting ready to terminate his involvement with Dr. Helms until "all this stuff happened at work". He further states that conflicts at work have affected him in a manner that has made him "sad and depressed". His reported depressive feelings are associated with work. He states "when I go to work on Mondays I feel like I'm in for forty hours of torment and wonder if I'll have a job on Friday". He reports feelings of inadequacy on the job stating "nothing I do is good enough". He denies feeling hopeless or helpless.

Mr. Cook's employment record consists of working for the City of Norwood for approximately twenty-four years. He has held many different labor jobs and is currently employed as a street sweeper. He reports being active in the Union, and also being past Union President and a past Union Steward. Additionally, he states he has many disciplinary actions throughout his career and blames his problems on the alleged discriminatory practices of the City. Mr. Cook has filed several EEOC complaints and numerous grievances to the State Employees Relation Board.

Page Four of Seven
RE: Dennis Cook

## PSYCHOLOGICAL TEST DATA

Mr. Cook was subjected to a number of different psychological inventories in order to better understand his personality configuration. Additionally, a packet of information forwarded this examiner by Mr. Hubbard was reviewed. This packet included a previous fitness for duty evaluation, letters from Mr. Cook's psychiatrist, correspondence regarding Mr. Cook from Mr. Hubbard and Mr. Cross, and various grievance reports and findings filed by Mr. Cook over the years. As part of the fitness for duty evaluation Mr. Cook was administered the Hilson Career Satisfaction Index (HCSI), Hilson Life Adjustment Profile (HLAP), Hilson Safety/Security Risk Inventory (HS/SRI), Hilson Personnel Profile/Success Quotient (HPP/SQ), Inwald Survey 2 & 5 (IS2&5), Millon Clinical Multiaxial Inventory-III (MCMI-III), and the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). Both the MCMI-III and the MMPI-2 are measures of personality functioning and psychopathology. The remaining inventories measure various indices including; an individual's emotional adjustment and current work satisfaction, the identification of an individual's characteristics and behavior patterns in a variety of settings, the assessment of an individual's suitability for a job,

Page Five of Seven
RE: Dennis Cook

He appeared to feel that he has not received enough recognition for his efforts and may feel his current position does not offer adequate potential for advancement. He may have some difficulty trusting peers at work. He may feel that his colleagues cannot be counted on to help solve work related problems and he may be somewhat sensitive to criticism.

According to item responses, he may be somewhat anxious and worry prone. He may tend to keep problems to himself and show some evidence of nervous tension. He admits to having some problems of anxiety or irrational fears that may limit daily functioning. Some degree of chronic anxiety or even panic reactions may be present for this individual.

Compared with others tested, this individual scored in the top sixteen percent suggesting a history of some motor vehicle infractions and/or driving difficulties. He may sometimes take risks while driving or fail to comply with safety regulations at times.

Item endorsements indicate a history of work adjustment difficulties. A pattern of unauthorized absences, lateness, and disciplinary actions, may be evident. He appears to be unusually guarded and worried about the motives of others. He may prefer jobs that do not involve extensive interactions with others.

Compared with others tested, this individual scored in the top sixteen percent with regard to lack of work ethic and lack of conscientiousness/reliability. Characteristics may include a lack of candor, undue suspiciousness, impulsiveness/restlessness, job adjustment difficulties, and being somewhat insensitive to social cues.

Similarly, he scored in the top sixteen percent of individuals tested suggesting he may have a history of antisocial behaviors. These may include fighting, vandalism, and/or a history with brushes with the law.

Additionally, item endorsements indicate that he scored in the top two percent on a composite score indicating a lack of hostility and anger control. Work adjustment difficulties, disciplinary infractions, cynical/antisocial attitudes, or problems with impulse/anger control may be evident.

His responses indicate that he does not always consider standard safety precautions and may be lax in following some safety rules and regulations. He may have been somewhat accident prone in the past. At times, this individual may be somewhat insensitive to the reactions of other people, and to the effects his behavior has on them. He does not appear to be overly concerned about gaining approval from others and may respond with apathy to social rejection.

Compared with other candidates tested, this individual lacks social skills. He may feel some discomfort working in a position where a great deal of people contact is required.

Page Six of Seven
RE: Dennis Cook

He does not appear to be exceptionally motivated towards work. While he may be able to finish job tasks on time, he does not usually put in extra hours to reach goals more quickly. He may not be interested to working at jobs that require a very high level of energy and productivity. He does not feel a great deal of anxiety or pressure to complete his work exactly on time. It does not concern him if he is a bit late or somewhat disorganized. He avoids becoming compulsive about assignments. It may be difficult to motivate him to complete job tasks.

Mr. Cook's performance on the MMPI-2 suggested that he cooperated with the evaluation enough to provide useful interpretable information. Test data are reflective of serious interpersonal problems and a tendency to develop debilitating psychological and physical symptoms under stress. He is presently experiencing a great deal of somatic stress. He may be somewhat rigid and angry. He may feel that other people do not give him enough support and sympathy for his physical complaints. At times, he may deny responsibility and blame others for his problems. In addition, he tends to view the world as a threatening place, sees himself as being unjustly blamed for others' problems, and feels that he is getting a raw deal from life. He appears to be overly sensitive in interpersonal situations and is easily hurt by others. His tendency toward unusual sensitivity to criticism may result in strained interpersonal relationships. Many individuals with this profile have an abrasive interpersonal style and have trouble getting along with others.

Test data is suggestive of frankly paranoid behavior. Indications suggest that Mr. Cook's thinking may be disturbed and that he may have delusions of persecution of grandeur. He may feel mistreated and picked on; he may feel angry and resentful and may harbor grudges. Rejection is a common defense mechanism. He is likely to seem selfish, self centered, and narcissistic. He tends to have a pessimistic and cynical outlook towards life. Additional data described him as expressing hostility indirectly, lacking insight and being resistant to psychological interpretation.

## OPINION

Based on this examiner's review of all data submitted, as well as, an extensive interview and psychological testing conducted on Mr. Dennis Cook, I find that he is psychologically unfit to perform the duties of a heavy equipment operator ie. street sweeper or any other job for the City of Norwood that requires interaction with the public. His levels of paranoia and lack of insight into how his behavior affects others make him a high risk for future performance difficulty on the job. Given his personality structure, it would not be unlikely that he would engage in bizarre and/or litigious behavior. Furthermore, due to his level of paranoia, he will interpret any negative findings as a "conspiracy" and further attempt to deflect responsibility from himself. His levels of frustration, and anger make it difficult for him to recognize appropriate boundaries. Furthermore, Mr. Cook's psychological status is not of recent etiology. One can trace the beginnings of his problems from his early childhood. He has displayed a pattern of deceitfulness, impulsive behavior, and self defeating actions throughout his life. His inability to recognize his shortcomings have further contributed to his levels of paranoia.

Page Seven of Seven
RE: Dennis Cook

I hope this information helps in your understanding of this individual's current psychological status. Please feel free to contact me if you have further questions.

J. Nick Marzella, PhD.
Psychologist

JNM:jmo

West Broad Medical Ctr    2575 W Broad St.    Columbus, OH 43204



(614) 621-3673
Fax (614) 621-9508
785 East Broad Street    Columbus, Ohio 43205

**Association for Psychotherapy, Inc.**

J. Nick Marzella, Ph.D.
Stephen A. Douglas, Ph.D.
John H. Mason, Ph.D.
Ellen Kay Douglas, Ph.D.
Amy M. Spiess, M.A.
Hope H. Schrim, MS, LPCC
Jerold H. Altman, M.D.

October 22, 2002

**Confidential**

Lawrence E. Barbiere
Attorney at Law
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249-3703

Re: Dennis Cook
SS# 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
Date of Birth: April 5, 1955

Dear Mr. Barbiere:

Per your request I have reviewed Dennis Cook's psychological and psychiatric records, as well as, information gleaned from his general medical records, the testimony of experts regarding his physical and psychological conditions, and depositions of Mr. Cook taken with regards to various legal matters he has instigated against the City of Norwood. Specifically, reports from George Parsons, Ph.D., a fitness for duty evaluation performed by Monica Jackson, Ph.D. psychologist, records of Cathleen Calderon LISW, a report from Merritt Oleski, Ph.D., psychologist, records of David A. Helm, M.D., psychiatrist, records of Public Employment Retirement Systems evaluations, as well as, treatment notes and reports from Mr. Cook's caretakers over the years.

The findings of this report address your referral questions of whether or not Mr. Cook's psychological problems pre-date problems he has experienced with the City of Norwood since 1998, and whether his condition was made worse by these events. Additionally, the question as to whether or not Mr. Cook is totally disabled and whether or not he may be able to perform other jobs was addressed.

Mr. Cook has been diagnosed with multiple psychiatric problem over the years. According to records, Mr. Cook's first psychiatric hospitalization occurred following the death of his father in 1972 where in he was diagnosed with an unspecified "major psychiatric illness." His second psychiatric hospitalization occurred when he was nineteen years of age as a result of "increasing agitation and fear that he was going to lose control, perhaps lose control of his mind." At this time, Charles Enzer, M.D., and M. Schaen, M.D., diagnosed Mr. Cook with an "adjustment reaction of adult life and a personality disturbance, immature." They stated "this is a personality disturbance requiring long-term psychiatric care." Mr. Cook has also suffered various industrial related accidents over the years resulting from multiple physical diagnoses including herniated disc (July, 1996), lumbar strain (Dr. Pembauer, July 1996), impingement syndrome (Dr. Whittsett August, 1994), aggravation of degenerative disc disease (Dr. Penix December, 1998), and others.

Page Two of Four
Re: Dennis Cook

In addition to many physical evaluations, Mr. Cook has undergone a plethora of psychological evaluations over the past several years as a result of motions to add psychological diagnoses to his various Bureau of Workers' Compensation claims, and litigation activity filed by Mr. Cook. Of note for this review are psychological/psychiatric opinions and evaluations performed by Monica Jackson, Ph.D., George Parsons, Ph.D., Merritt Oleski, Ph.D., David Helm, M.D., and Cathleen Calderon, LISW. Additional information is also offered based on this evaluator's examination of Mr. Cook in July, 1998.

Mr. Cook has had multiple psychiatric diagnoses over the years. Early records are indicative of poor adjustment, deficits in coping skills, and a mood disorder. His most recent treating psychiatrist, Dr. Helm, initially diagnosed Mr. Cook as cyclothymic, which is a mood disorder. By the late 1990's, Dr. Helm changed his diagnosis to Bipolar II Disorder and "by March 1999, I had been treating him as Bipolar II." Dr. Helm cited Mr. Cook's "condition as a chronic one and at this point, disabling." (October 26, 1999) Dr. Helm offered additional insight into Mr. Cook's functioning in reports dated May 26, and June 29, 1998 respectively. He states although Mr. Cook suffers from a mood disorder, his "mood control (was) sufficient to maintain social decision." In June, 1998, Dr. Helm reported "he is driving himself to burn out, as well as, creating negative strain where he works." In May, 1999, Dr. Helm stated Mr. Cook is "not functioning well... should get disability retirement." Mr. Cook filed for PERS disability in 1999 due to his degenerative disc disease. William Fritts, M.D., on August 16, 1999 did not find him disabled stating he "would not anticipate degenerative disc disease to last a twelve month period," and Mr. Cook's disability request was denied by PERS in October, 1999. In November, 1999, Mr. Cook submitted additional information and was subsequently referred for follow up examinations. Dr. William Beatty, psychiatrist, found Mr. Cook permanently disabled in February 2000, with a diagnosis of Bipolar Disorder. R. Koppenhoefer, M.D. found Mr. Cook "mentally incapacitated permanently" in December 1999, and George Parsons, Ph.D., as a psychologist, opined in August, 1998, that Mr. Cook's condition was not work prohibitive. Dr. Parsons reevaluated Mr. Cook in November 1999, and found at that time Mr. Cook's condition had deteriorated significantly. He stated:

> "Mr. Cook sustained an occupational disability as a result of his employment with the City of Norwood; his impairments included both mental and physical conditions." Dr. Parsons also stated: "My observation of Mr. Cook would certainly imply he may in the past suffered from various psychological conditions and is now presently treated by Dr. Helm for Cyclothymia. On the other hand, it is obvious his condition has been present for some period of time and he continues to be able to perform the same or similar work duty as a street sweeper in a private contractual basis. Therefore, I would see no reason why Mr. Cook's psychological condition would permit him from being able to perform his normal or customary work as a street sweeper."

In September 2000, Dr. Parsons rendered yet another opinion indicating Mr. Cook was " fifty percent of the way between a disabled and non-disabled individual in relationship to his employment and participation in the labor force." Finally, in June, 2002, Dr. Parsons, as a vocational expert, reexamined Mr. Cook and found him "unable to perform any work activity on a sustained basis... now or in the foreseeable future." Dr. Parsons cited many problems such as difficulty getting along with others, agitation, and "discomfort in almost all settings" as the basis for his opinion.

**Page Three of Four**
**Re: Dennis Cook**

In May 1996, Monica Jackson, Ph.D., psychologist, found Mr. Cook unfit to return to work for psychological reasons, and he was subsequently ordered not to return to work until he completed a therapy program with Dr. Jackson. Dr. Jackson cited an "history of inappropriate angry outbursts" causing problems both at home and work for Mr. Cook. She also stated Mr. Cook "has difficulty maintaining the appropriate professional boundaries" due to his anger and frustration. Finally, Dr. Jackson opined "Mr. Cook's difficulties require further psychiatric attention, as well as, psychological intervention in the form of regular psychotherapy." When Mr. Cook was examined by this examiner in July, 1998, he was found "psychologically unfit to perform the duties of equipment operator, i.e. street sweeper or any other job for the City of Norwood that requires interaction with the public."

In October 2000, Merritt Oleski, Ph.D., psychologist, evaluated Mr. Cook for the Bureau of Workers' Compensation to determine whether or not Mr. Cook's psychological presentation supported the existence of a Bipolar Affective Disorder and neurotic depression. Dr. Oleski also addressed whether or not these alleged conditions were a direct result of Mr. Cook's May 12, 1999 industrial injury. Dr. Oleski found "the medical evidence and examination findings do not support the existence of the requested condition." He further stated "the requested psychological condition of bipolar disorder cannot be caused by a work injury. This is a matter of basic diagnostic categorization and as such by definition, no bipolar disorder can be linked to any work injury."

**Opinion:**

Dennis Cook has suffered long-standing psychological problems. Throughout the course of his life, he has experienced interpersonal difficulty, conflict with authority, difficulty in the work place and family problems. He has had multiple psychiatric diagnoses attributed him beginning at a relatively young age. The early manifestations of his bipolar disorder can be seen in his developmental history. Bipolar type II disorders are associated with significant social and vocational difficulties and increased risk of suicide. Mr. Cook's cyclical alternations of major depressive symptoms characterized by poor concentration, loss of pleasure in most activities, feelings of hopelessness and futility, coupled with periods of mania characterized by paranoia, expansiveness, flight of ideas, and distractability, have brought him into significant psychosocial and workplace conflict.

Mr. Cook's behavioral problems and conflicts with his environment, including the City of Norwood, are manifestations of his mental illness and not caused by the City. At times, he has functioned better than at others generally due to psychiatric management. Nonetheless, he will continually come into conflict with his environment due to his illness, and as stated by psychiatrist Schaen and Enzer, when Mr. Cook was approximately nineteen years old "this is a personality disturbance requiring long-term treatment."

Given Mr. Cook's psychological condition, he is unable to engage in substantial remunerative employment. Since this examiner's evaluation of Mr. Cook in 1998, Mr. Cook has experienced cyclical mood swings as indicated by the medical/psychological records of Drs. Helm, Parsons, Oleski, and social worker Calderon. Upon review of these medical records and observing Mr. Cook's video taped depositions, it is with a reasonable degree of psychological certainty that Mr. Cook continues to experience a Bipolar Affective Disorder type II, and is psychologically disabled from engaging in substantial remunerative employment. All opinions expressed in this report are offered with a reasonable degree of psychological certainty.

**Page Four of Four**
**Re: Dennis Cook**

I hope this information helps in your understanding of Mr. Cook's psychological makeup. Please feel free to call me with any questions.

Sincerely,

J. Nick Marzella, Ph.D.
Psychologist

JNM: ckg

# RESUME

## J. NICK MARZELLA, PH.D.

Association for Psychotherapy, Inc
785 East Broad Street
Columbus, Ohio 43205
(614) 621-3673

### DEGREES, LICENSE & CERTIFICATIONS

Ohio Board of Psychology, Psychologist, Licensed October, 1976, #2237

Board Certified Forensic Examiner, September, 1995

Diplomate, Board Certified Academy of Pain Management, June, 1994

Certificate of Proficiency, American Psychological Association, June, 1996

Alcohol Psychoactive Substance Disorders

The Ohio State University, Counselor Education, Ph.D. August, 1975

Ohio University, Counselor Education, M.ED.. March, 1971

Ohio University, Advertising Management, BSJ June, 1970

### MAJOR WORK EXPERIENCE AND ACCOMPLISHMENTS

PRESENT                    PSYCHOLOGIST: Private Practice

Association for Psychotherapy, Inc. President, Managing Partner Private practice specializing in Rational Psychotherapy for individuals and families, as well as, psychological consultation, program development and evaluation for corporations, individuals and agencies.

A.P. Inc is a private psychology practice managing multiple offices in Columbus, Ohio. A.P. Inc. has a multi-disciplinary staff that provides behavioral health care services to individuals and families.

Resume of J. Nick Marzella, Ph.D.
Page Two of Six

Acquisition, development and the sale of several psychological practice sites over the years have allowed A.P. Inc. to remain a viable practice in the changing climate of behavioral health care.

Negotiating contracts, developing employee assistance programs, providing organizational consultation and development, and profitably managing A.P. Inc has further strengthened the practice in its continuous evolution as an efficient and effective provider of behavioral health care.

An ever growing part of my practice has been in the field of Police Psychology. For over the past twenty years, I've taught stress management and Domestic Crisis Intervention courses to the Columbus Division of Police, as well as providing inservice training, and consultation to many departments. The past five years have seen a dramatic increase in the provision of pre-employment psychological testing to law enforcement agencies and safety forces. Currently, A.P. Inc. contracts with approximately fifty different law enforcement agencies to provide pre-employment psychological evaluations. These departments range from larger organization such as the Ohio State Highway Patrol, Columbus Division of Police and Franklin County Sheriff's Department, to smaller departments including Kettering Police Department, Gahanna Police Department, Reynoldsburg Police Department and many others.

CHAIRMAN:

Section of Psychology, Grant Medical Center
1992 to 1998

Duties consist of developing the role of consulting psychologist in the hospital and overseeing the Section of Psychology.

Additional duties include reviewing credentials of new applicants, and participating on the Behavioral Health Care Advisory Committee to the hospital.

CONSULTANT: Police Psychologist

Provides psychological consultation to approximately fifty law enforcement organizations including, but not limited to:

Resume of J. Nick Marzella, Ph.D.
Page Three of Six

|  |  |
|---|---|
|  | Columbus Division of Police, Ohio State Highway Patrol, Bureau of Criminal Investigation, Federal Bureau of Investigation, Franklin County Sheriff's Department, Kettering Police Department, Marion County Sheriff's Department, Licking County Sheriff's Department, Lancaster Police Department, Ohio Department of Public Safety, and Gahanna Police Department. |

Pre-Employment Psychological Screening

Fitness For Duty Evaluations

Typical duties include:

Teaching Stress Management and Domestic Crisis Intervention to Police Officers

Providing in service training and Psychotherapy regarding the management of stress to members within the department, providing Critical Incident Stress Debriefing.

**LECTURER, PUBLIC SPEAKER, WORKSHOP LEADER:**

Presentations are available involving the reduction and management of psychological stress. Stress related programs have been presented to a wide variety of organizations and individuals, including school faculties and administrators, realtors, physicians, police departments and private businesses.

| | |
|---|---|
| 1980 | **VISITING PROFESSOR:** |
| | Otterbein College; taught abnormal psychology for the Department of Psychology |
| August 1975 to February 1977 | **ASSOCIATE DIRECTOR CONSULTATION AND EDUCATION:** |
| | North Central Community Mental Health Center |
| | Plan, organize, and implement all major programming in consultation, education, and community transitional services. Administratively responsible for sixty-five staff persons in the |

Resume of J. Nick Marzella, Ph.D.
Page Four of Six

consultation, education, intermediate care and transitional halfway houses. Supervise consultation activities of staff. Evaluation and planning of consultation services to diverse community. Supervision of in service training. Psychological consultation and counseling.

While at NCCMHC, I helped implement major consultation and education programs to the North Central Community including prevention, education, in service training and consultations to groups, agencies, organizations, and individuals within the North Central area.

Co-authored several major grant applications, including the Center's $.50 million conversion grant and the Center's $2.3 million operations grant.

Formulated evaluation techniques of program outcome. Presented papers at several national conventions.

July 1977 to
June 1979

**FIELD PSYCHOLOGICAL CONSULTATION:**

Bureau of Vocational Rehabilitation, Columbus, Ohio

Duties consisted of Disability Determination and review of psychological consultations submitted by psychologists in the community.

September 1976
to June 1978

**ADJUNCT ASSISTANT PROFESSOR:**

The Ohio State University, Faculty of Special Services

Duties consisted of teaching clinical practica for doctoral students.

October 1973
to June 1975

**PSYCHOLOGICAL INTERN:**

The Ohio State University
Counseling and Consultation Center

Duties included family, couple, marital and individual psychotherapy, testing and evaluation.

Resume of J. Nick Marzella, Ph.D.
Page Five of Six

| | |
|---|---|
| October 1973 to June 1974 | **COORDINATOR:** <br><br> The Ohio State University <br> Freshman Early Experience Counseling Program <br><br> Duties included personality, vocational testing and counseling of persons participating in early field placement in teacher education. |
| February 1973 to September 1973 | **DIRECTOR/PLANNER:** <br><br> Sargus Juvenile Center <br><br> Consulted with the Board of Trustees; helped to set up staffing patterns, budgets, staff duties, and general operations. |
| February 1973 to June 1973 | **INSTRUCTOR:** <br><br> Ohio University, Belmont County Branch Campus <br><br> Part-time; taught the Psychology of Human relations to persons participating in a Savings and Loan Institute |
| April 1971 to January 1973 | **PSYCHIATRIC SOCIAL WORK SPECIALIST** <br><br> United States Army <br> Fort Gordon Drug and Alcohol Treatment Center |
| June 1970 March 1971 | **GRADUATE ASSISTANT:** <br><br> Ohio University |
| September 1968 to June 1970 | **MANAGER/OWNER:** <br><br> Self-established business |
| Summers, 1966-68 | **LABORER:** <br><br> Steel mills, construction companies, coal mines |

Resume of J. Nick Marzella, Ph.D.
Page Six of Six

## PROFESSIONAL PAPERS, ARTICLES, AND NATIONAL PRESENTATIONS

Marzella, J.N., <u>The Effects of Rational Stage Directed Therapy on Selected Variables of Psychological Stress: A comparative Study.</u> Dissertation, The Ohio State University, August, 1975.

Marzella, J.N., Tosi, D.J., "Rational Stage Directed Hypnotherapy". Paper presented at 1st National Conference on Rational Psychotherapy, June 1975, Chicago.

Marzella, J.N., "Rational Stage Directed Therapy". Symposium on rational Psychotherapy and Hypnosis; The American Society for Clinical Hypnosis. Paper presented at National Convention, October, 1976, Chicago.

Tosi, D.J., Marzella, J.N., "Rational Stage Directed Therapy" in <u>Twenty Years of Rational Therapy</u>. Wolfe and Brand, eds., New York, 1977.

<u>Toward Emotional Freedom Through Rational Thinking</u>: Marzella, J.N. & Boutin, G.E., APC Press 1979.

Marzella, J. N., "Psychological Screening: To Test or Not To Test?", <u>The Ohio Police Chief</u>, October, 1988.

Marzella, J. Nick, "Psychological Effects of Suicide by Cops on Involved Officers," in <u>Suicide and Law Enforcement</u>. Sheehan and Warren, eds., U.S. Department of Justice, Federal Bureau of Investigation, 2001

## PROFESSIONAL ASSOCIATIONS

Ohio Psychological Association
Central Ohio Psychological Association
International Association of Chiefs of Police, Psychological Services Section
American Academy of Pain Management, Diplomate

R6/02