

Cook, Dennis
9 ?7635

2/6

**Merritt S. Oleski, Ph.D.**

**Offices**
**238 Northland Boulevard**
**Suite 128B**
**Cincinnati, OH 45246**

**10979 Reed Hartman Highway**
**Suite 130B**
**Cincinnati, OH 45242**




Bureau of Workers Compensation
Attention: Ms. Margie P.
8500 Governors Hill Drive, Suite 400
Cincinnati, OH 45249-1389






**Claimant's Name:** Mr. Dennis J. Cook
**Claim Number:** 99-427635
**Date of Injury:** 05/12/1999
**Claim Allowance Requested for 296.53 Bipolar Affective Disorder, Depression-Severe, 300.4 Neurotic Depression**
**Date of Examination:** 10/24/2000
**Examiner's Name:** Merritt S. Oleski, Ph.D.



**Purpose of Exam:**

1. Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.

2. What is normal onset of this type of diagnosis?

3. What is the normal recovery period for this condition(s)?



4. Is/are the alleged condition(s) a direct and proximate result of the industrial injury?

5. If the condition was present prior to the injury, did the injury aggravate the psychological condition?

6. If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.

**Behavioral Observations:**

Mr. Cook arrived late for his appointment (due to getting lost). He was well groomed. Dress and hygiene were appropriate. He entered the office walking with a normal gait. The relationship to the examiner was normal and appropriate with vocabulary consistent with reported educational level (graduated high school). Pace of speech was moderately loud and atypical. The purpose of this evaluation was discussed with Mr. Cook. He stated that he understood the purpose of the evaluation and its limited confidentiality.

Mr. Cook presented with a tense demeanor. The IW spoke with a moderately loud voice tone. There were starts and stops in his speech pattern. His lower lip quivered and his hands trembled. Also, the IW's shoulders shook and he lowered his right leg up and down constantly while seated. His shirt was buttoned incorrectly at the top causing his collar to be high upon his right side. The IW's whole presentation was atypical and appeared to be indicative of a confused thought process.

Cook, Denni
99-427635

**Mental Status Exam**

Mr. Cook presented as oriented to person, place and time and was alert and coherent. He functioning in the low normal range of mental ability. Mr. Cook was able to recall 4 digits forwar in reverse order. This result is at the lower end of the normal range. He was able to recal immediately and 0 objects after a 5 minute delay. When presented with a series of questions whic abstract generalizations, he produced responses indicative of a quite limited ability to conceptualize.

**Discussion:**

The focus of the clinical interview was on Mr. Cook's psychological status post injury of 5/12/1999. following files were reviewed:

- Dr. George Parsons' psychological evaluation of 11/17/1999.
- Dr. David Helm's psychiatric evaluation of 10/26/1999

The findings of the files reviewed are accepted.

Dr. Parsons had seen and evaluated the IW on August 27, 1998 and on November 17, 1999. At the tin of the first evaluation Dr. Parsons indicated that, "it was my professional opinion Mr. Cook would l capable of returning to his customary work as a street sweeper for the City of Norwood." By the time ( the second evaluation, Dr. Parsons noted, "it is my professional opinion that Mr. Cook's condition ha deteriorated since my initial evaluation of August 27, 1998 . . . It is further my opinion, the episodes t which Mr. Cook noted at the time of my second interview would give rise to increasing psychologica distress and in probably the antecedent of his eventual hospitalization in June and July 1999 from wha appears to be a significant exacerbation of his previous psychological condition."

Dr. Helm reported that the IW's " . . . current medications have enabled him to pace himself and maintain. He is currently disabled regarding his emotional status . . . He is not doing well in spite of significant doses of medication. His condition is a chronic one and at this point disabling."

When asked to describe his own psychological status, Mr. Cook stated " . . . still have thoughts of going to City Hall and blowing their brains out . . . still have suicide thoughts . . . medicine has kept me (made a gesture with both hands toward chest . .. I'd be better off dead than alive . . ." When asked if he had any more thoughts or feelings about how he felt, the IW retorted, " . . . no, not really, that's about it . . . how I feel."

Mr. Cook described his sleep as, "I don't without the medicine, the medicine (Chloral Hydrate, Remeron, Xanax, Trazodone) the I get 3 hours sleep . . . then I wake up again, take another Trazodone).

When asked to describe his level of pain on a scale of one to ten, with ten being extreme pain, Mr. Cook described his pain as "a seven . . . the medicine sometimes make it go away for awhile . . ."

When asked to describe a typical day, Mr. Cook reported, " . . I watch television, look forward to kids coming home from school, have 5 kids, (eight altogether) plus daughter and son-in-law and their 2 kids, it is a big house . . . sometimes go out with my wife . . . sometimes go to flag football games of my kids . . ."

Cc Dennis
99-417635

Overall, Mr. Cook presented with a tense demeanor. He quickly wandered off course when responding to questions. The IW appeared to have great difficulty focusing on a particular thought. The IW became easily confused, but appeared to try very hard to comply with the interview format.

**Opinion:**

The following opinions are based on a review of the psychological files provided, and the mental status exam and clinical interview of 10/24/2000.

1. **Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.**

   1) The requested condition of 300.4 Neurotic Depression would suggest depressive symptomology that would be subsumed??? by the Bipolar Disorder for which the IW is reportedly being treated. Therefore, the medical evidence and the examination findings do not support the existence of the requested condition.

   2) The requested psychological condition of Bipolar Disorder cannot be caused by a work injury. This is a mater of basic diagnostic categorization and as such by definition, no Bipolar Disorder can be linked to any work injury.

2. **What is normal onset of this type of diagnosis?**

   1) Not Applicable

   2) Normal onset of bipolar disorder is entirely biologically based. The scientific literature is replete with studies which conclude that this is a biologically based disease entity which cannot be triggered by a traumatic physical injury.

3. **What is the normal recovery period for this condition(s)?**

   1) Not Applicable

   2) Not Applicable

4. **Were the alleged condition(s) a direct and proximate result of the industrial injury?**

   1) Not Applicable

   2) Not Applicable

5. **If the condition was present prior to the injury, did the injury aggravate the psychological condition?**

   1) Not Applicable

   2) Not Applicable

6. **If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.**

1) Not Applicable

2) What follows is a commentary regarding this IW's psychological condition, not a recommendation for a BWC Treatment allowance.

This IW is clearly a distressed individual as noted in the comments above. He presented a medication list which included lithium carbonate. The IW also reported that he sees a psychiatrist (one time a month) and a therapist (2 times a month) as part of the management of his psychological condition. This gentleman appears to be a fragile personality, fighting hard to maintain some sense of normalcy in his life. Hopefully, the IW will follow through with his treatment plan for this serious psychological condition.

Merritt S. Oleski, Ph.D.
Merritt S. Oleski, Ph.D.
Licensed Ohio Psychologist #3319

Official Copy

Cook, Dennis
9 ?7635 2/6

Merritt S. Oleski, Ph.D.

Offices
238 Northland Boulevard
Suite 128B
Cincinnati, OH 45246

10979 Reed Hartman Highway
Suite 130B
Cincinnati, OH 45242




Bureau of Workers Compensation
Attention: Ms. Margie P.
8500 Governors Hill Drive, Suite 400
Cincinnati, OH 45249-1389

Claimant's Name: Mr. Dennis J. Cook
Claim Number: 99-427635
Date of Injury: 05/12/1999
Claim Allowance Requested for 296.53 Bipolar Affective Disorder, Depression-Severe, 300.4 Neurotic Depression
Date of Examination: 10/24/2000
Examiner's Name: Merritt S. Oleski, Ph.D.

**Purpose of Exam:**

1. Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.

2. What is normal onset of this type of diagnosis?

3. What is the normal recovery period for this condition(s)?

4. Is/are the alleged condition(s) a direct and proximate result of the industrial injury?

5. If the condition was present prior to the injury, did the injury aggravate the psychological condition?

6. If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.

**Behavioral Observations:**

Mr. Cook arrived late for his appointment (due to getting lost). He was well groomed. Dress and hygiene were appropriate. He entered the office walking with a normal gait. The relationship to the examiner was normal and appropriate with vocabulary consistent with reported educational level (graduated high school). Pace of speech was moderately loud and atypical. The purpose of this evaluation was discussed with Mr. Cook. He stated that he understood the purpose of the evaluation and its limited confidentiality.

Mr. Cook presented with a tense demeanor. The IW spoke with a moderately loud voice tone. There were starts and stops in his speech pattern. His lower lip quivered and his hands trembled. Also, the IW's shoulders shook and he lowered his right leg up and down constantly while seated. His shirt was buttoned incorrectly at the top causing his collar to be high upon his right side. The IW's whole presentation was atypical and appeared to be indicative of a confused thought process.

Cook, Denni
99-427635

**Mental Status Exam**

Mr. Cook presented as oriented to person, place and time and was alert and coheren... functioning in the low normal range of mental ability. Mr. Cook was able to recall 4 digits forwar... in reverse order. This result is at the lower end of the normal range. He was able to reca... immediately and 0 objects after a 5 minute delay. When presented with a series of questions whic... abstract generalizations, he produced responses indicative of a quite limited ability to conceptualize.

**Discussion:**

The focus of the clinical interview was on Mr. Cook's psychological status post injury of 5/12/1999. following files were reviewed:

- Dr. George Parsons' psychological evaluation of 11/17/1999.
- Dr. David Helm's psychiatric evaluation of 10/26/1999

The findings of the files reviewed are accepted.

Dr. Parsons had seen and evaluated the IW on August 27, 1998 and on November 17, 1999. At the tin... of the first evaluation Dr. Parsons indicated that, "it was my professional opinion Mr. Cook would b... capable of returning to his customary work as a street sweeper for the City of Norwood." By the time o... the second evaluation, Dr. Parsons noted, "it is my professional opinion that Mr. Cook's condition ha... deteriorated since my initial evaluation of August 27, 1998 . . . It is further my opinion, the episodes t... which Mr. Cook noted at the time of my second interview would give rise to increasing psychologica... distress and in probably the antecedent of his eventual hospitalization in June and July 1999 from wha... appears to be a significant exacerbation of his previous psychological condition."

Dr. Helm reported that the IW's " . . . current medications have enabled him to pace himself and maintain. He is currently disabled regarding his emotional status . . . He is not doing well in spite of significant doses of medication. His condition is a chronic one and at this point disabling."

When asked to describe his own psychological status, Mr. Cook stated " . . . still have thoughts of going to City Hall and blowing their brains out . . . still have suicide thoughts . . . medicine has kept me (made a gesture with both hands toward chest . . I'd be better off dead than alive . . ." When asked if he had any more thoughts or feelings about how he felt, the IW retorted, " . . . no, not really, that's about it . . . how I feel."

Mr. Cook described his sleep as, "I don't without the medicine, the medicine (Chloral Hydrate, Remeron, Xanax, Trazodone) the I get 3 hours sleep . . . then I wake up again, take another Trazodone).

When asked to describe his level of pain on a scale of one to ten, with ten being extreme pain, Mr. Cook described his pain as "a seven . . . the medicine sometimes make it go away for awhile . . ."

When asked to describe a typical day, Mr. Cook reported, " . . I watch television, look forward to kids coming home from school, have 5 kids, (eight altogether) plus daughter and son-in-law and their 2 kids, it is a big house . . . sometimes go out with my wife . . . sometimes go to flag football games of my kids . . ."

Cc Dennis
99-4_7635

Overall, Mr. Cook presented with a tense demeanor. He quickly wandered off course when responding to questions. The IW appeared to have great difficulty focusing on a particular thought. The IW became easily confused, but appeared to try very hard to comply with the interview format.

**Opinion:**

The following opinions are based on a review of the psychological files provided, and the mental status exam and clinical interview of 10/24/2000 .

1. **Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.**

   1) The requested condition of 300.4 Neurotic Depression would suggest depressive symptomology that would be subsumed??? by the Bipolar Disorder for which the IW is reportedly being treated. Therefore, the medical evidence and the examination findings do not support the existence of the requested condition.

   2) The requested psychological condition of Bipolar Disorder cannot be caused by a work injury. This is a mater of basic diagnostic categorization and as such by definition, no Bipolar Disorder can be linked to any work injury.

2. **What is normal onset of this type of diagnosis?**

   1) Not Applicable

   2) Normal onset of bipolar disorder is entirely biologically based. The scientific literature is replete with studies which conclude that this is a biologically based disease entity which cannot be triggered by a traumatic physical injury.

3. **What is the normal recovery period for this condition(s)?**

   1) Not Applicable

   2) Not Applicable

4. **Were the alleged condition(s) a direct and proximate result of the industrial injury?**

   1) Not Applicable

   2) Not Applicable

5. **If the condition was present prior to the injury, did the injury aggravate the psychological condition?**

   1) Not Applicable

   2) Not Applicable

Cc: Dennis
99-427635

6. **If, in your opinion, the psychological condition is present, what should current and future treatment include: *please indicate frequency and duration.***

   1) Not Applicable

   2) What follows is a commentary regarding this IW's psychological condition, not a recommendation for a BWC Treatment allowance.

This IW is clearly a distressed individual as noted in the comments above. He presented a medication list which included lithium carbonate. The IW also reported that he sees a psychiatrist (one time a month) and a therapist (2 times a month) as part of the management of this psychological condition. This gentleman appears to be a fragile personality, fighting hard to maintain some sense of normalcy in his life. Hopefully, the IW will follow through with his treatment plan for this serious psychological condition.

Merritt S. Oleski, Ph.D.

**Merritt S. Oleski, Ph.D.**
**Licensed Ohio Psychologist #3319**

Cook, Dennis
9 ?7635



**Merritt S. Oleski, Ph.D.**

**Offices**
**230 Northland Boulevard**
**Suite 128B**
**Cincinnati, OH 45246**

**10979 Reed Hartman Highway**
**Suite 130B**
**Cincinnati, OH 45242**







Bureau of Workers Compensation
Attention: Ms. Margie P.
8500 Governors Hill Drive, Suite 400
Cincinnati, OH 45249-1389

Claimant's Name: Mr. Dennis J. Cook
Claim Number: 99-427635
Date of Injury: 05/12/1999
Claim Allowance Requested for 296.53 Bipolar Affective Disorder, Depression-Severe, 300.4 Neurotic Depression
Date of Examination: 10/24/2000
Examiner's Name: Merritt S. Oleski, Ph.D.

**Purpose of Exam:**

1. Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.

2. What is normal onset of this type of diagnosis?

3. What is the normal recovery period for this condition(s)?

4. Is/are the alleged condition(s) a direct and proximate result of the industrial injury?

5. If the condition was present prior to the injury, did the injury aggravate the psychological condition?

6. If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.

**Behavioral Observations:**

Mr. Cook arrived late for his appointment (due to getting lost). He was well groomed. Dress and hygiene were appropriate. He entered the office walking with a normal gait. The relationship to the examiner was normal and appropriate with vocabulary consistent with reported educational level (graduated high school). Pace of speech was moderately loud and atypical. The purpose of this evaluation was discussed with Mr. Cook. He stated that he understood the purpose of the evaluation and its limited confidentiality.

Mr. Cook presented with a tense demeanor. The IW spoke with a moderately loud voice tone. There were starts and stops in his speech pattern. His lower lip quivered and his hands trembled. Also, the IW's shoulders shook and he lowered his right leg up and down constantly while seated. His shirt was buttoned incorrectly at the top causing his collar to be high upon his right side. The IW's whole presentation was atypical and appeared to be indicative of a confused thought process.

Cook, Denni
99-427635

**Mental Status Exam**

Mr. Cook presented as oriented to person, place and time and was alert and coherent. He . functioning in the low normal range of mental ability. Mr. Cook was able to recall 4 digits forwar in reverse order. This result is at the lower end of the normal range. He was able to recal immediately and 0 objects after a 5 minute delay. When presented with a series of questions whic abstract generalizations, he produced responses indicative of a quite limited ability to conceptualize.

**Discussion:**

The focus of the clinical interview was on Mr. Cook's psychological status post injury of 5/12/1999. following files were reviewed:

- Dr. George Parsons' psychological evaluation of 11/17/1999.
- Dr. David Helm's psychiatric evaluation of 10/26/1999

The findings of the files reviewed are accepted.

Dr. Parsons had seen and evaluated the IW on August 27, 1998 and on November 17, 1999. At the tin of the first evaluation Dr. Parsons indicated that, "it was my professional opinion Mr. Cook would t capable of returning to his customary work as a street sweeper for the City of Norwood." By the time c the second evaluation, Dr. Parsons noted, "it is my professional opinion that Mr. Cook's condition ha deteriorated since my initial evaluation of August 27, 1998 . . . It is further my opinion, the episodes t which Mr. Cook noted at the time of my second interview would give rise to increasing psychologica distress and in probably the antecedent of his eventual hospitalization in June and July 1999 from wha appears to be a significant exacerbation of his previous psychological condition."

Dr. Helm reported that the IW's " . . . current medications have enabled him to pace himself and maintain. He is currently disabled regarding his emotional status . . . He is not doing well in spite of significant doses of medication. His condition is a chronic one and at this point disabling."

When asked to describe his own psychological status, Mr. Cook stated " . . . still have thoughts of going to City Hall and blowing their brains out . . . still have suicide thoughts . . . medicine has kept me (made a gesture with both hands toward chest . . I'd be better off dead than alive . . ." When asked if he had any more thoughts or feelings about how he felt, the IW retorted, " . . . no, not really, that's about it . . . how I feel."

Mr. Cook described his sleep as, "I don't without the medicine, the medicine (Chloral Hydrate, Remeron, Xanax, Trazodone) the I get 3 hours sleep . . . then I wake up again, take another Trazodone).

When asked to describe his level of pain on a scale of one to ten, with ten being extreme pain, Mr. Cook described his pain as "a seven . . . the medicine sometimes make it go away for awhile . . ."

When asked to describe a typical day, Mr. Cook reported, " . . I watch television, look forward to kids coming home from school, have 5 kids, (eight altogether) plus daughter and son-in-law and their 2 kids, it is a big house . . . sometimes go out with my wife . . . sometimes go to flag football games of my kids . . ."

Cc Dennis
99-427635

Overall, Mr. Cook presented with a tense demeanor. He quickly wandered off course when responding to questions. The IW appeared to have great difficulty focusing on a particular thought. The IW became easily confused, but appeared to try very hard to comply with the interview format.

**Opinion:**

The following opinions are based on a review of the psychological files provided, and the mental status exam and clinical interview of 10/24/2000 .

1. **Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.**

   1) The requested condition of 300.4 Neurotic Depression would suggest depressive symptomology that would be subsumed??? by the Bipolar Disorder for which the IW is reportedly being treated. Therefore, the medical evidence and the examination findings do not support the existence of the requested condition.

   2) The requested psychological condition of Bipolar Disorder cannot be caused by a work injury. This is a mater of basic diagnostic categorization and as such by definition, no Bipolar Disorder can be linked to any work injury.

2. **What is normal onset of this type of diagnosis?**

   1) Not Applicable

   2) Normal onset of bipolar disorder is entirely biologically based. The scientific literature is replete with studies which conclude that this is a biologically based disease entity which cannot be triggered by a traumatic physical injury.

3. **What is the normal recovery period for this condition(s)?**

   1) Not Applicable

   2) Not Applicable

4. **Were the alleged condition(s) a direct and proximate result of the industrial injury?**

   1) Not Applicable

   2) Not Applicable

5. **If the condition was present prior to the injury, did the injury aggravate the psychological condition?**

   1) Not Applicable

   2) Not Applicable

Cc Dennis
99-427635

6. **If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.**

1) Not Applicable

2) What follows is a commentary regarding this IW's psychological condition, not a recommendation for a BWC Treatment allowance.

This IW is clearly a distressed individual as noted in the comments above. He presented a medication list which included lithium carbonate. The IW also reported that he sees a psychiatrist (one time a month) and a therapist (2 times a month) as part of the management of his psychological condition. This gentleman appears to be a fragile personality, fighting hard to maintain some sense of normalcy in his life. Hopefully, the IW will follow through with his treatment plan for this serious psychological condition.

Merritt S. Oleski, Ph.D.

Merritt S. Oleski, Ph.D.
Licensed Ohio Psychologist #3319

Cook, Dennis
9 ·7635 2/6

Merritt S. Oleski, Ph.D.

Offices
230 Northland Boulevard
Suite 128B
Cincinnati, OH 45246

10979 Reed Hartman Highway
Suite 130B
Cincinnati, OH 45242








Bureau of Workers Compensation
Attention: Ms. Margie P.
8500 Governors Hill Drive, Suite 400
Cincinnati, OH 45249-1389

Claimant's Name: Mr. Dennis J. Cook
Claim Number: 99-427635
Date of Injury: 05/12/1999
Claim Allowance Requested for 296.53 Bipolar Affective Disorder, Depression-Severe, 300.4 Neurotic Depression
Date of Examination: 10/24/2000
Examiner's Name: Merritt S. Oleski, Ph.D.

**Purpose of Exam:**

1. Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.

2. What is normal onset of this type of diagnosis?

3. What is the normal recovery period for this condition(s)?

4. Is/are the alleged condition(s) a direct and proximate result of the industrial injury?

5. If the condition was present prior to the injury, did the injury aggravate the psychological condition?

6. If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.

**Behavioral Observations:**

Mr. Cook arrived late for his appointment (due to getting lost). He was well groomed. Dress and hygiene were appropriate. He entered the office walking with a normal gait. The relationship to the examiner was normal and appropriate with vocabulary consistent with reported educational level (graduated high school). Pace of speech was moderately loud and atypical. The purpose of this evaluation was discussed with Mr. Cook. He stated that he understood the purpose of the evaluation and its limited confidentiality.

Mr. Cook presented with a tense demeanor. The IW spoke with a moderately loud voice tone. There were starts and stops in his speech pattern. His lower lip quivered and his hands trembled. Also, the IW's shoulders shook and he lowered his right leg up and down constantly while seated. His shirt was buttoned incorrectly at the top causing his collar to be high upon his right side. The IW's whole presentation was atypical and appeared to be indicative of a confused thought process.

Cook, Denni
99-427635

**Mental Status Exam**

Mr. Cook presented as oriented to person, place and time and was alert and coherent. He . functioning in the low normal range of mental ability. Mr. Cook was able to recall 4 digits forwar in reverse order. This result is at the lower end of the normal range. He was able to recal immediately and 0 objects after a 5 minute delay. When presented with a series of questions whic abstract generalizations, he produced responses indicative of a quite limited ability to conceptualize.

**Discussion:**

The focus of the clinical interview was on Mr. Cook's psychological status post injury of 5/12/1999. following files were reviewed:

- Dr. George Parsons' psychological evaluation of 11/17/1999.
- Dr. David Helm's psychiatric evaluation of 10/26/1999

The findings of the files reviewed are accepted.

Dr. Parsons had seen and evaluated the IW on August 27, 1998 and on November 17, 1999. At the tin of the first evaluation Dr. Parsons indicated that, "It was my professional opinion Mr. Cook would b capable of returning to his customary work as a street sweeper for the City of Norwood." By the time o the second evaluation, Dr. Parsons noted, "it is my professional opinion that Mr. Cook's condition ha deteriorated since my initial evaluation of August 27, 1998 . . . It is further my opinion, the episodes t which Mr. Cook noted at the time of my second interview would give rise to increasing psychologica distress and in probably the antecedent of his eventual hospitalization in June and July 1999 from wha appears to be a significant exacerbation of his previous psychological condition."

Dr. Helm reported that the IW's " . . . current medications have enabled him to pace himself and maintain. He is currently disabled regarding his emotional status . . . He is not doing well in spite of significant doses of medication. His condition is a chronic one and at this point disabling."

When asked to describe his own psychological status, Mr. Cook stated " . . . still have thoughts of going to City Hall and blowing their brains out . . . still have suicide thoughts . . . medicine has kept me (made a gesture with both hands toward chest . . . I'd be better off dead than alive . . ." When asked if he had any more thoughts or feelings about how he felt, the IW retorted, " . . . no, not really, that's about it . . . how I feel."

Mr. Cook described his sleep as, "I don't without the medicine, the medicine (Chloral Hydrate, Remeron, Xanax, Trazodone) the I get 3 hours sleep . . . then I wake up again, take another Trazodone).

When asked to describe his level of pain on a scale of one to ten, with ten being extreme pain, Mr. Cook described his pain as "a seven . . . the medicine sometimes make it go away for awhile . . ."

When asked to describe a typical day, Mr. Cook reported, " . . I watch television, look forward to kids coming home from school, have 5 kids, (eight altogether) plus daughter and son-in-law and their 2 kids, it is a big house . . . sometimes go out with my wife . . . sometimes go to flag football games of my kids . . ."

Cc Dennis
99-427635

Overall, Mr. Cook presented with a tense demeanor. He quickly wandered off course when responding to questions. The IW appeared to have great difficulty focusing on a particular thought. The IW became easily confused, but appeared to try very hard to comply with the interview format.

**Opinion:**

The following opinions are based on a review of the psychological files provided, and the mental status exam and clinical interview of 10/24/2000.

1. **Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.**

   1) The requested condition of 300.4 Neurotic Depression would suggest depressive symptomology that would be subsumed??? by the Bipolar Disorder for which the IW is reportedly being treated. Therefore, the medical evidence and the examination findings do not support the existence of the requested condition.

   2) The requested psychological condition of Bipolar Disorder cannot be caused by a work injury. This is a mater of basic diagnostic categorization and as such by definition, no Bipolar Disorder can be linked to any work injury.

2. **What is normal onset of this type of diagnosis?**

   1) Not Applicable

   2) Normal onset of bipolar disorder is entirely biologically based. The scientific literature is replete with studies which conclude that this is a biologically based disease entity which cannot be triggered by a traumatic physical injury.

3. **What is the normal recovery period for this condition(s)?**

   1) Not Applicable

   2) Not Applicable

4. **Were the alleged condition(s) a direct and proximate result of the industrial injury?**

   1) Not Applicable

   2) Not Applicable

5. **If the condition was present prior to the injury, did the injury aggravate the psychological condition?**

   1) Not Applicable

   2) Not Applicable

03 11 13 26

Cc Dennis
99-427635

6. **If, in your opinion, the psychological condition is present, what should current and future *treatment include: please indicate frequency and duration.***

1) Not Applicable

2) What follows is a commentary regarding this IW's psychological condition, not a recommendation for a BWC Treatment allowance.

This IW is clearly a distressed individual as noted in the comments above. He presented a medication list which included lithium carbonate. The IW also reported that he sees a psychiatrist (one time a month) and a therapist (2 times a month) as part of the management of this psychological condition. This gentleman appears to be a fragile personality, fighting hard to maintain some sense of normalcy in his life. Hopefully, the IW will follow through with his treatment plan for this serious psychological condition.

Merritt S. Oleski, Ph.D.

**Merritt S. Oleski, Ph.D.**
**Licensed Ohio Psychologist #3319**

Copy Only

Cook, Dennis
9 ?7635 2/6




Merritt S. Oleski, Ph.D.

Offices
230 Northland Boulevard
Suite 128B
Cincinnati, OH 45246

10979 Reed Hartman Highway
Suite 130B
Cincinnati, OH 45242

Bureau of Workers Compensation
Attention: Ms. Margie P.
8500 Governors Hill Drive, Suite 400
Cincinnati, OH 45249-1389



Claimant's Name: Mr. Dennis J. Cook
Claim Number: 99-427635
Date of Injury: 05/12/1999
Claim Allowance Requested for 296.53 Bipolar Affective Disorder, Depression-Severe, 300.4 Neurotic Depression
Date of Examination: 10/24/2000
Examiner's Name: Merritt S. Oleski, Ph.D.

**Purpose of Exam:**

1. Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.

2. What is normal onset of this type of diagnosis?

3. What is the normal recovery period for this condition(s)?

4. Is/are the alleged condition(s) a direct and proximate result of the industrial injury?

5. If the condition was present prior to the injury, did the injury aggravate the psychological condition?

6. If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.

**Behavioral Observations:**

Mr. Cook arrived late for his appointment (due to getting lost). He was well groomed. Dress and hygiene were appropriate. He entered the office walking with a normal gait. The relationship to the examiner was normal and appropriate with vocabulary consistent with reported educational level (graduated high school). Pace of speech was moderately loud and atypical. The purpose of this evaluation was discussed with Mr. Cook. He stated that he understood the purpose of the evaluation and its limited confidentiality.

Mr. Cook presented with a tense demeanor. The IW spoke with a moderately loud voice tone. There were starts and stops in his speech pattern. His lower lip quivered and his hands trembled. Also, the IW's shoulders shook and he lowered his right leg up and down constantly while seated. His shirt was buttoned incorrectly at the top causing his collar to be high upon his right side. The IW's whole presentation was atypical and appeared to be indicative of a confused thought process.

Cook, Denni.
99-427635

**Mental Status Exam**

Mr. Cook presented as oriented to person, place and time and was alert and coherent. He . functioning in the low normal range of mental ability. Mr. Cook was able to recall 4 digits forward in reverse order. This result is at the lower end of the normal range. He was able to recal immediately and 0 objects after a 5 minute delay. When presented with a series of questions whic abstract generalizations, he produced responses indicative of a quite limited ability to conceptualize.

**Discussion:**

The focus of the clinical interview was on Mr. Cook's psychological status post injury of 5/12/1999. following files were reviewed:

- Dr. George Parsons' psychological evaluation of 11/17/1999.
- Dr. David Helm's psychiatric evaluation of 10/26/1999

The findings of the files reviewed are accepted.

Dr. Parsons had seen and evaluated the IW on August 27, 1998 and on November 17, 1999. At the tin of the first evaluation Dr. Parsons indicated that, "it was my professional opinion Mr. Cook would t capable of returning to his customary work as a street sweeper for the City of Norwood." By the time of the second evaluation, Dr. Parsons noted, "it is my professional opinion that Mr. Cook's condition ha deteriorated since my initial evaluation of August 27, 1998 . . . It is further my opinion, the episodes t which Mr. Cook noted at the time of my second interview would give rise to increasing psychologica distress and in probably the antecedent of his eventual hospitalization in June and July 1999 from wha appears to be a significant exacerbation of his previous psychological condition."

Dr. Helm reported that the IW's " . . . current medications have enabled him to pace himself and maintain. He is currently disabled regarding his emotional status . . . He is not doing well in spite of significant doses of medication. His condition is a chronic one and at this point disabling."

When asked to describe his own psychological status, Mr. Cook stated " . . . still have thoughts of going to City Hall and blowing their brains out . . . still have suicide thoughts . . . medicine has kept me (made a gesture with both hands toward chest . . . I'd be better off dead than alive . . ." When asked if he had any more thoughts or feelings about how he felt, the IW retorted, " . . . no, not really, that's about it . . . how I feel."

Mr. Cook described his sleep as, "I don't without the medicine, the medicine (Chloral Hydrate, Remeron, Xanax, Trazodone) the I get 3 hours sleep . . . then I wake up again, take another Trazodone).

When asked to describe his level of pain on a scale of one to ten, with ten being extreme pain, Mr. Cook described his pain as "a seven . . . the medicine sometimes make it go away for awhile . . ."

When asked to describe a typical day, Mr. Cook reported, " . . I watch television, look forward to kids coming home from school, have 5 kids, (eight altogether) plus daughter and son-in-law and their 2 kids, it is a big house . . . sometimes go out with my wife . . . sometimes go to flag football games of my kids . . ."

Cc Dennis
99-417635

Overall, Mr. Cook presented with a tense demeanor. He quickly wandered off course when responding to questions. The IW appeared to have great difficulty focusing on a particular thought. The IW became easily confused, but appeared to try very hard to comply with the interview format.

**Opinion:**

The following opinions are based on a review of the psychological files provided, and the mental status exam and clinical interview of 10/24/2000 .

1. **Determine whether the submitted medical evidence and the examination findings support the existence of the requested condition according to DSM-IV classification.**

   1) The requested condition of 300.4 Neurotic Depression would suggest depressive symptomology that would be subsumed??? by the Bipolar Disorder for which the IW is reportedly being treated. Therefore, the medical evidence and the examination findings do not support the existence of the requested condition.

   2) The requested psychological condition of Bipolar Disorder cannot be caused by a work injury. This is a mater of basic diagnostic categorization and as such by definition, no Bipolar Disorder can be linked to any work injury.

2. **What is normal onset of this type of diagnosis?**

   1) Not Applicable

   2) Normal onset of bipolar disorder is entirely biologically based. The scientific literature is replete with studies which conclude that this is a biologically based disease entity which cannot be triggered by a traumatic physical injury.

3. **What is the normal recovery period for this condition(s)?**

   1) Not Applicable

   2) Not Applicable

4. **Were the alleged condition(s) a direct and proximate result of the industrial injury?**

   1) Not Applicable

   2) Not Applicable

5. **If the condition was present prior to the injury, did the injury aggravate the psychological condition?**

   1) Not Applicable

   2) Not Applicable

Cc Dennis
99-427635

6. **If, in your opinion, the psychological condition is present, what should current and future treatment include: please indicate frequency and duration.**

1) Not Applicable

2) What follows is a commentary regarding this IW's psychological condition, not a recommendation for a BWC Treatment allowance.

This IW is clearly a distressed individual as noted in the comments above. He presented a medication list which included lithium carbonate. The IW also reported that he sees a psychiatrist (one time a month) and a therapist (2 times a month) as part of the management of this psychological condition. This gentleman appears to be a fragile personality, fighting hard to maintain some sense of normalcy in his life. Hopefully, the IW will follow through with his treatment plan for this serious psychological condition.

Merritt S. Oleski, Ph.D.
Merritt S. Oleski, Ph.D.
Licensed Ohio Psychologist #3319

Confidential Copy