UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DENNIS COOK | : | CASE NO. C-1-02-073 |
| | : | Judge Weber |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF NORWOOD, et al. | : | |
| | : | |
| Defendants. | : | |

PLAINTIFF'S MEMORANDUM IN RESPONSE TO
DEFENDANT NORWOOD'S MOTION FOR JUDGMENT
AS A MATTER OF LAW

Now comes the Plaintiff, by and through undersigned counsel, and in response to the Defendant's Motion for Judgment as a Matter of Law states as follows:

MEMORANDUM

The Defendant Norwood is nothing but resilient in its effort to make this case go away on whatever terms it can advance. In analyzing the Defendant Norwood's Motion for Judgment as a Matter of Law the Court should consider the following:

The Defendant City of Norwood has adeptly and consistently advanced one inconsistent argument after the next throughout these proceedings. The Plaintiff did file an age discrimination charge with the EEOC as the result of the City of Norwood removing the Plaintiff from the position of leadman of the street crew and replacing the Plaintiff with an individual (Osterday) who had less than two years experience with the City of Norwood. Exhibit 553. Norwood removed the Plaintiff from the position based on the Plaintiff allegedly not being able to operate the backhoe although Osterday and the backhoe operator (Smith) failed to possess the correct license to operate the backhoe

1

pursuant to the requirements of the City of Norwood. Exhibit 554. The Plaintiff was discriminated against because of age when he was denied the position of leadman. The Plaintiff's age discrimination claim was denied based on the Plaintiff failing to allege "constructive discharge" in his complaint. Quite frankly at the time of the filing of Plaintiff's age discrimination claim in May 1998 he was not discharged, constructively or otherwise, Plaintiff was denied the position of leadman by a bus driver (Hubbard) who admitted the only reason he held the position of Public Works Director was his political connections to Defendant Hochbein.

Norwood alleges there was no retaliation taken against the Plaintiff which is truly unbelievable based on the record before the Court. The Plaintiff files an EEOC charge and his license is checked and he is removed from operating the street sweeper on the same date Norwood receives his EEOC complaint. Plaintiff is the only individual singled out by Norwood. The other individuals required to have a "Class A" license, Osterday, Smith and all other leadmen, licenses are not checked. The same day Defendant Hochbein receives the EEOC complaint, the Plaintiff is removed from operating the street sweeper. This is not a mere coincidence.

When the Plaintiff files subsequent EEOC complaints, Norwood takes action, through Hubbard and Cross, to assign the Plaintiff to the worst jobs. Exhibits 556 and 557. The Plaintiff was assigned to the worst jobs at the direction of Cross and Hubbard when the foregoing Defendants disabled the street sweeper. Defendants Hubbard and Cross knowing they disabled the street sweeper to assign the Plaintiff to the worst job at Norwood Public Works then make the Plaintiff jump through a series of useless hoops including the filing of grievances, attendance at phony grievance hearings where the Plaintiff was railroaded and the deliberate lies of the Defendants to the State Employment Relation Board when the Plaintiff complained of the Defendants' activities in the City of Norwood.

Exhibit 558. Note well, the Plaintiff is not aware of the Defendants' activities to disable the street sweeper, the phoney grievance hearings or involvement in a grievance process that was a sham in 1998, 1999 or 2000. Defendants Hubbard and Cross lied throughout the various judicial and administrative processes available to the Plaintiff to vindicate his rights. It did not matter to the Defendants' Cross and Hubbard whether it was under oath in a federal court (*Perkins vs. Jones*), disciplinary hearings, depositions, grievance hearings or a myriad of other matters involving the Plaintiff. Only the Defendant Norwood could construe the activities of its employees as business as usual and somehow argue there was no adverse employment action against the Plaintiff. In its response the Defendant Norwood should step forward and list the other employees of the City of Norwood subjected to the same criminal conduct as the Plaintiff. There is no stuttering or hesitancy on the part of the Plaintiff in using the term criminal conduct as that is exactly how the Defendant Norwood conducted itself in its dealings with the Plaintiff. The testimony of Defendant Hubbard at the trial shows his utter contempt for this Court by lying and stating he disabled the street sweeper because the Plaintiff filed grievances, when Cook did not file any grievances between May 13, 1998 and the filing of a grievance in July 1998.

The Defendant Norwood alleges it is unclear what protected activity the Plaintiff is claiming, the Plaintiff views this allegation as little more than a continuation of the state of denial the Defendant Norwood desires to claim as home. Defendant Norwood obviously views the filing of EEOC complaints and participation in the investigation of same as not protected activity. While Congress enacted a law which specifically prohibits retaliation for filing an EEOC charge and the courts view the filing of EEOC complaints as protected activity, Defendant Norwood desires this Court to find the conduct not protected activity. 42 U.S.C. 12203.

The Defendant Norwood next advances the argument the Plaintiff injured himself in May 1999. Norwood conveniently omits the fact the Plaintiff was supervised by Osterday who was assigned to make the Plaintiff's life and others who filed EEOC complaints a living hell. Norwood omits the fact the Plaintiff was denied his right to bump job assignments permitted by the union agreement. See Exhibit 60. Norwood omits the fact the Plaintiff immediately preceding the refusal of Norwood to permit the Plaintiff to return to work in May 1999 occurred immediately after the Plaintiff testified at a SERB hearing on behalf of another individual who filed an EEOC complaint against Norwood and the employee was subjected to the same treatment as the Plaintiff. Norwood conveniently omitted the fact that while the Plaintiff was denied the right to return to work to a light duty assignment another employee (Smith) was permitted to work light duty at the same time as the Plaintiff was refused the same opportunity. Norwood conveniently forgets many events because the facts, and not the fantasy world where Defendant Norwood resides, do not support the assertions in its motion.

The Plaintiff's inability to continue working was not caused by a "longstanding psychological illness," which did not impair his ability to work for the previous twenty seven years, rather the demented management style of Norwood's employees. The Plaintiff was hounded by the Defendant Norwood and its incompetent management team for more than eighteen months and finally it took its toll on an eggshell Plaintiff. Although the Defendant Norwood states the Defendant was not discharged or constructively discharged, the foregoing are not terms of art, but rather a more simplistic manner of describing what occurred to the Plaintiff: "he was removed." The Plaintiff was denied the opportunity to work. "A constructive discharge exists if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to

resign." *Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987) (citations omitted). A plaintiff must show that the employer intended and could reasonably have foreseen the impact of its conduct on the employee." *Id.*  It is difficult to believe working conditions could be more hellish than perpetrated by the Defendants who toyed with the Plaintiff's emotions and eventually caused the Plaintiff to suffer a nervous breakdown.

      The Defendant Norwood continually harps about the content of the Plaintiff's EEOC complaints.  The complaints were completed by the Plaintiff without the assistance of an attorney.  The Sixth Circuit has addressed the very issue raised by the Defendant Norwood in *Davis v. Sodexho, Cumberland College Cafeteria,* 157 F.3d 460, 463 (6th Cir. 1998).  ("where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.").  The Plaintiff's complaint was limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.  *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir. 1977), cert. denied, 435 U.S. 915 (1978).  The Plaintiff cannot be tied to the four corners of the one-page form document under all circumstances.  *Ang vs. Proctor & Gamble*, 932 F.2d 540, 545 (6th Cir. 1991).  The Plaintiff was not represented at the time of the filing of the complaint with the EEOC and the violations contained in the right to sue letter are exactly the causes of action asserted by the Plaintiff and investigated by EEOC after repeated meetings and correspondence with EEOC.  The delay occasioned by the EEOC and Norwood attempting to conciliate without the participation of the Plaintiff, in direct violation of law, is one more ruse utilized by the Defendant Norwood to delay or defeat the Plaintiff from his day in Court.

      Additionally the Defendant Norwood's reliance on *Kramer v. Banc of America Securities,*

*LLC.*, 355 F.3d. 961 (2004) is misplaced. No where in the foregoing case does it state or imply front pay is not available to a party subjected to discrimination or retaliation. Further the Defendant alleges the Plaintiff was not discharged from the City of Norwood, since the Defendant Norwood did not issue Plaintiff a notice of termination, Norwood simply refused to permit the Plaintiff to work while permitting other employees (Smith and Lacinak) with the same or similar limitations to work. The Plaintiff was not paid any compensation while other employees (Smith and Lacinak) received checks. Plaintiff remained on the Norwood payroll until April 26, 2000. The only difference between the Plaintiff and the other employees was the Plaintiff filed EEOC complaints and assisted others who filed complaints with the EEOC.

The Defendant Norwood states it "made a bona fide offer to extend a leave of absence in accordance with that Code section (O.R.C. § 145.362) for an additional five years." The foregoing was tendered in the midst of possible settlement of the case and therefore is not admissible and it should not be considered by the Court. Additionally, the belated offer at the conclusion of the presentation of the evidence in the case, after Defendant Norwood destroyed the Plaintiff's life, is too little too late. It is an insult. It is similar to a discriminating landlord who states to a black prospective tenant "you caught me renting to white people under terms that I would not make available to you and rather than pay you any money you can live in the building since you caught me." What a generous offer to return to an employer who engages in blatant discrimination, encourages employees to harm employees who file EEOC complaints, permits its employees to lie under oath and files false pleadings with administrative agencies (SERB) to attempt to perpetuate the discrimination and deny the Plaintiff's right to stop it. Every employee should jump at the chance to be employed by such cretins.

Defendant Norwood created a work environment for the Plaintiff which was hostile to say the

least. Norwood essentially offers to return the Plaintiff to a workplace composed of miscreants and liars. Front pay is available when reinstatement is impractical or impossible. *Kucia v. Southeast Ark. Cmty. Action Corp.*, 284 F.3d 944, 948-49 (8th Cir. 2002). In *Kucia,* the Court recognized that due to extreme animosity or ill-will between the employer and employee, it may make an amicable and productive work relationship impossible and thus justify an award of front pay. The Defendant Norwood's offer of five years to be able to return is a sham. Norwood knows the Plaintiff is unable to work, and his inability to work resulted from Norwood's ill-treatment, to wit: physically and psychologically damaging harassment experienced at Norwood. Given the level of hostility created by the Defendant Norwood, an order reinstating Plaintiff to defendant's workplace would be antithetical to his health and impractical.

      The law books are replete with case after case which state front pay is an equitable remedy. The Sixth Circuit has characterized front pay as an equitable remedy. E.g., <u>Shore v. Federal Express Corp.</u>, No. 93-5548, 42 F.3d 373, (6th Cir. Dec. 19, 1994) (front pay under Title VII, 42 U.S.C. § 2000e-5(g), authorizing "equitable relief"); <u>Roush v. KFC Nat'l Management Co.</u>, 10 F.3d 392, 398 (6th Cir. 1993), <u>cert. denied</u>, 115 S. Ct. 56 (1994) (action under Age Discrimination in Employment Act, 29 U.S.C. § 626(c)(1), authorizing legal or equitable relief; front pay characterized as equitable). Norwood seeks to characterize the award of front pay as an anomaly when in actuality the front pay award is insignificant for the Plaintiff and the refusal to grant back pay is clearly erroneous. Front pay is an approved equitable remedy as set forth in 42 U.S.C. § 2000e-5(g). The mere fact the Defendant does not like the award does not make it illegal or inappropriate.

      The Defendant Norwood than asserts "Drs. Marzella and Oleski testified the Plaintiff's psychological illness and related inability to work were not caused by the conduct of the City of

Norwood or its employees." The Plaintiff chooses deliberately to ignore the testimony of Marzella since it is obvious that he was hired gun by Norwood, practices more than 100 miles from Norwood and did not have any contact with the Plaintiff after July 1998. Marzella's evaluation consisted of one interview with the Plaintiff in July 1998 after the Defendants Hubbard and Cross were disabling equipment and requiring the Plaintiff to participate in phony disciplinary and grievance proceedings. Marzella viewed the Plaintiff as not trusting of other individuals and the evidence at trial proved the Plaintiff's position was validated because the Defendants Hubbard and Cross were liars and the mechanisms used by the Plaintiff within the Defendant Norwood to stop the harassment of the Plaintiff were fake. Oleski's testimony demonstrated the most qualified individual to determine if the Plaintiff's condition was made worse as the result of the Defendants' illegal behavior was Dr. Helm. Dr. Helm clearly stated the Defendants caused the Plaintiff's condition to worsen and his records admitted into evidence clearly demonstrate it and the causal connection based on a reasonable degree of medical certainty.

The glowing pearl in the Defendant Norwood's Motion for Judgment as a Matter of Law is: "Plaintiff's contention that he was retaliated against as a result of 'protected activity' cannot support a retaliation claim." The protected activity was the filing of the EEOC complaint and his assistance to others during the same time period who filed EEOC complaints. Examine Exhibit 494 and it is clear the Plaintiff engaged in protected activity and Plaintiff was placed on administrative leave, demoted and suffered adverse job actions. More importantly Norwood's appeal or grievance process for the Plaintiff did not operates in a timely fashion and the Plaintiff continued to suffer materially adverse actions as the result of Norwood corrupting the grievance process. Finally the filing of an EEOC complaint is the essence of protected activity.

The Plaintiff continues to assert the denial of his age discrimination claims and other causes of action because they were time barred or Plaintiff failed to allege "constructive discharge" should be revisited by the Court. Specifically the uncontroverted evidence is the Defendant Hubbard and Cross lied under oath and refused to testify truthfully until after the Court ruled on the Motion for Summary Judgment. Additionally the acts of the Defendants denied the Plaintiff access to relief under Norwood law, i.e., bargaining agreement adopted by Norwood Council by ordinance, and State law, i.e., denial of opportunity to present his claims to the SERB because the Defendants lied. Plaintiff was not familiar with the depth of the lies until June 2001 when employees of Norwood testified truthfully. Essentially the Defendants reduced lying to an art form and they will reap the benefits of same by the failure to hold them accountable for their acts in violation of the law through their excellent skill at prevarication.

The Plaintiff attempted to invoke this Court's jurisdiction with respect to additional causes of action which the Court denied. The Plaintiff continues to maintain and assert the causes of action were viable and the Plaintiff cannot continue to advance arguments when the Court has ruled except to preserve the record. The Plaintiff cannot present to the Court continuing arguments upon items the Court has ruled without running afoul of the Court. Additionally the Plaintiff has been consistent in the arguments presented to the Court while the Defendant Norwood has worn its dancing shoes throughout these proceedings.

/s/Robert G. Kelly
Robert G. Kelly        0002167
Attorney for Plaintiff
4353 Montgomery Road
Norwood, Ohio 45212
1-513-531-3636
1-513-531-0135 fax
Email: rgkfskgreg@aol.com

CERTIFICATE OF SERVICE

    I hereby certify that on January 25, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following: James F. Brockman, Esq., Attorney for Defendant Kevin Cross, Lawrence E. Barbiere, Esq., Attorney for Defendant City of Norwood, Steven Martin, Esq., Attorney for Defendant Gary Hubbard and McGregor Dixon, Jr., Esq., SHIPMAN, DIXON & LIVINGSTON CO., L.P.A., Attorney for Defendant Joseph Hochbein.

/s/Robert G. Kelly
Robert G. Kelly    0002167
Attorney for Plaintiff