UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DENNIS COOK,** | : | CASE NO. 1:02cv00073 |
| | : | (J. Weber) |
| **Plaintiff** | : | |
| | : | |
| vs. | : | |
| | : | |
| **CITY OF NORWOOD, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**DEFENDANT CITY OF NORWOOD'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW**

**I.    PRELIMINARY STATEMENT.**

Plaintiff has submitted to the Court a Memorandum in Response to Defendant Norwood's Motion for Judgment as a Matter of Law which provides no legal or evidentiary basis sufficient to support the jury's $200,000 front pay award to Plaintiff for ADA retaliation. Previously, in granting in part and denying in part the Motions for Summary Judgment, this Court dismissed all discrimination claims against the City of Norwood with the exception of disability discrimination. (Doc. 68, p. 25). The Joint Final Pretrial Statement further stated:

> The jurisdiction of the Court is invoked under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, 28 U.S.C. § 1331 and 42 U.S.C. §§ 12101-12213. (Doc. 78).

With respect to the nature of the action and jurisdiction, at the Final Pretrial Conference, the Court stated as follows:

> Now, the nature of the action and jurisdiction, this is an action for discrimination due to disability and also there is the retaliation issue for filing disability discrimination charges with the EEOC. (Tp. of Pretrial Conference, p. 18).

Plaintiff's post-trial submissions to the Court, including his Memorandum in Response,

indicate that Plaintiff is unaware that his claims under 42 U.S.C. §§ 1983, 1985 and 1986, as well as his age discrimination claims, are no longer before this Court. Plaintiff filed a motion for new trial with respect to claims which were dismissed and were not tried to the jury in the first instance. Now, in his Memorandum in Response to the City of Norwood's Motion for Judgment as a Matter of Law, Plaintiff continues to argue issues which were never before the jury and which have no bearing on the City of Norwood's entitlement to judgment as a matter of law.

Plaintiff references his age discrimination charge filed with the EEOC related to his the lead man position. (Dx. 553). Plaintiff also asserts that he was denied the position of lead man on the basis of "political connections." Plaintiff says that there were "deliberate lies" told by Defendants to SERB. Plaintiff alleges that the grievance process under the collective bargaining agreement was a "sham." He says that he was denied the right to bump job assignments contrary to the collective bargaining agreement. The foregoing statements by Plaintiff are immaterial to his claim for ADA retaliation. The ADA prohibits retaliation as follows:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by **this Chapter** or because such individual made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing under **this Chapter**. 42 U.S.C. § 12203(a). (Emphasis added).

ADA retaliation requires proof that Plaintiff was discriminated against because of opposition to an act or practice made unlawful by the Americans with Disabilities Act, or proof of retaliation for making a charge in a proceeding under the Americans with Disabilities Act.

Plaintiff's memorandum makes numerous assertions of age discrimination. It asserts evidence supporting claims based upon the collective bargaining agreement. It asserts politics, favoritism and just plain nastiness. But it fails to present evidence that he was discriminated

-2-

against based upon an ADA disability (which claim was rejected by the jury in any event) or that he was retaliated against for filing a disability discrimination charge.

In the absence of support in the facts or law, Plaintiff resorts to *ad hominem* attacks on the various Defendants. He refers to the collective bargaining grievance procedure as a requirement for Plaintiff to "jump through a series of useless hoops." (Plaintiff's Response, p. 2). He refers to "phony grievance hearings." Id. He refers to "deliberate lies" by Defendants to SERB. Id. He claims that he was subjected to "criminal conduct" by Defendants. (Plaintiff's Response, p. 3). He talks about the City of Norwood being in a "fantasy world." (Plaintiff's Response, p. 4). He refers to Defendants as "cretins." (Plaintiff's Response, p. 4). He calls the City of Norwood "a work place composed of miscreants and liars." (Plaintiff's Response, p. 7). Similar statements by Plaintiff includes calling individual Defendants "liars," the grievance procedure "fake," saying Defendants have "reduced lying to an art form," and accusing Defendants of having "excellent skill at prevarication." (Plaintiff's Response, p. 8-9).

Such *ad hominem* attacks by Plaintiff are immaterial to the resolution of Norwood's Motion for Judgment as a Matter of Law. Based upon the law and the evidence at trial, the City of Norwood is entitled to judgment as a matter of law. The evidence did not support a claim of ADA retaliation. Plaintiff is not entitled to front pay for ADA retaliation under the statute, and, Plaintiff would not be entitled to front pay in any event since he was not terminated constructively or otherwise by the City. He has been disabled since May 1999 and is not capable of working, not through any fault of the City of Norwood.

II.    **ARGUMENT AND LAW**.

    A.    **PLAINTIFF IS NOT ENTITLED TO FRONT PAY AS A MATTER OF LAW SINCE HIS LOSS OF WORK WAS NOT A RESULT OF ADA RETALIATION BY THE CITY OF NORWOOD.**

Assuming for purposes of argument only that front pay is an available remedy for ADA retaliation, the availability of that extraordinary remedy requires Plaintiff to show the City of Norwood's unlawful conduct caused his loss of employment. *Gotthardt v. National Railroad Passenger Corporation,* 191 F.3d 1148, 1125 (9th Cir. 1999); *Winsor v. Henkley Dodge,* 79 F.3d 996, 1002 (10th Cir. 1996). In *Gotthardt*, a Title VII case where front pay was an available remedy, the Court said:

> To receive front pay, a Title VII plaintiff must show that her employer's violations of Title VII caused her loss of employment. 191 F.3d at 1154.

Similarly, in *Winsor,* another Title VII case, the court also held that monetary relief was conditioned upon proof that the discrimination caused the change in employment status. She claimed that she was constructively discharged as a result of sexual harassment to which she was subjected. The court concluded that there was sexual harassment. Nevertheless, the court denied front pay because plaintiff was unable to produce evidence that her loss of employment was caused by the sexual harassment. The court said:

> Specifically, the Court concluded that plaintiff left Hinckley Dodge because of her relationship with a former sales manager, including the public exposure of their involvement in November 1990, the fact that she was no longer employed at the dealership, and the inference that plaintiff would no longer enjoy preferential treatment. As the record contains evidence to support these factual findings, the Court's conclusion that plaintiff was not constructively discharged is not clearly erroneous. . . . Therefore, the district court was correct in concluding that plaintiff was not entitled to Title VII relief. 79 F.3d at 2002.

Plaintiff continued to work at the City of Norwood until he was injured on the job while using a

weed eater on May 12, 1999. In his Memorandum in Response, Plaintiff admits that "at the time of the filing of Plaintiff's age discrimination claim in May 1998 he was not discharged, constructively or otherwise." (Plaintiff's Response, p. 2). Plaintiff made a worker's compensation claim for injuries to his back and neck as a result of the weed eater incident and was unable to work thereafter because of his physical injuries. In the Stipulated Facts set forth in the Joint Final Pretrial Order (Doc. 78 at 5), Plaintiff admitted that he injured his neck on May 12, 1999 while operating a weed eater; he admits he made worker's compensation claims with the Bureau of Workers' Compensation; he admits that on July 16, 1999, he applied to PERS for a determination that he was permanently disabled due to his physical condition; and he admits that PERS ultimately determined that he was permanently disabled due to his mental condition retroactive to June 1, 1999.

     Plaintiff's contention that he was denied the right to return to work after his injury is contrary to the evidence in the record. A BWC notice dated June 24, 1999 refers to the date of the injury as a result of the weed eater incident as May 12, 1999, and indicates that Plaintiff claimed neck pain as a result of the incident. (Px. 1124). Plaintiff's worker's compensation claim was filed on June 17, 1999 based upon the May 12 incident. (Dx. 600). The initial opinion of Plaintiff's attending physician Dr. Penix was that Plaintiff would be unable to work from the time of the injury until August 1, 1999. (Px. 1105, p. 389). On July 19, 1999, Dr. Penix issued a report stating that Plaintiff could not return to work until an estimated date of October 1, 1999. (Px. 1105, p. 380). The report did not permit Plaintiff to return to work even with restrictions. On September 28, 1999, Dr. Penix issued a similar report, not permitting Plaintiff to return to work even with restrictions, until an estimated date of January 1, 2000. (Px.

1105, p. 362). On December 21, 1999, Dr. Penix issued a similar report, not permitting Plaintiff to return to work even with restrictions, setting a further delayed estimated return date of March 12, 2000. (Px. 1105, p. 350-351). On February 1, 2000, Dr. Penix issued a similar report, again not permitting Plaintiff to return to work even with restrictions, setting the new estimated return date at June 1, 2000. (Px. 1105, p. 347). Further, Dr. Penix rendered the opinion that Plaintiff was totally disabled as a result of his physical condition (Dx. 590b) as a result of which Plaintiff applied to PERS for disabilities based upon his physical injuries on July 16, 1999 (Dx. 590).

Plaintiff's contention that he was "denied the right to return to work," while another employee named Smith was permitted to work light duty at the same time, is contrary to the evidence. At all relevant times after his May 12, 1999 injury, Plaintiff was claiming total disability as a result of the injury, and/or mental condition. His attending physician was in accordance with that claim. The City of Norwood communicated to Plaintiff's attorney that if he had a light duty release document it should be presented to the City for their consideration. (Px. 1023). But, Dr. Penix' various reports indicated that Plaintiff could not return to work under any conditions. Second, the employee Smith who was permitted to work light duty did present a release to the City of Norwood for such purpose from his physician.

The evidence is clear that Plaintiff was neither terminated nor constructively discharged by the City of Norwood. He stopped working as a result of a physical injury. He applied for and received worker's compensation disability benefits as a result of the injury. His physicians represented to the Bureau of Workers' Compensation that he was unable to work as a result of his injuries. He was disqualified from working as a result of his physical injuries until at least June 1, 2000. He was ultimately determined to be disabled by PERS as a result of a long-

standing psychological illness which was not caused by the City of Norwood, retroactive to June 1, 2000. As a condition of receiving a PERS disability, in accordance with R.C. §145.362, Plaintiff was placed on a five year leave of absence by PERS. Since Plaintiff was not terminated or constructively discharged by the City of Norwood, and since his inability to work is not a result of retaliation by the City of Norwood, but rather as a result of, initially his physical injuries, and subsequently the determination by PERS of a disability resulting from psychological illness, Plaintiff is not entitled to front pay as a matter of law.

### B. FRONT PAY IS NOT AN AVAILABLE REMEDY FOR ADA RETALIATION.

In *Kramer v. Banc of America Securities, LLC,* 355 F.3d 961 (2004), the Seventh Circuit ruled that the statutory remedies for ADA retaliation included equitable relief, including back pay, but not compensatory or punitive damages. The court in *Kramer* made a detailed analysis of the statutory bases for available ADA remedies under 42 U.S.C. § 2000e-5(g)(1). The court held that the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(2), did not expand the remedies available to a party bringing an ADA retaliation claim.[1] The cases relied upon by Plaintiff as to the availability of front pay are not ADA retaliation cases. See *Kucia v. Southeast Arc and Cmty. Action Corp.,* 284 F.3d 944, 948-49 (8th cir. 2002). *Kucia* was a Title VII racial discrimination case. Further, front pay was described as an "extraordinary" remedy which was denied in that case.

Even if this were a Title VII racial discrimination case where front pay is an available remedy, it would not be available under the facts herein for the reasons set forth above. Plaintiff

---

[1] District courts in the Third, Fourth and Eleventh Circuits have followed the *Kramer* decision as to the available remedies for ADA retaliation.

worked for the City of Norwood until he was injured. He filed a worker's compensation claim indicating total disability first for his physical injury, therefor his mental condition ultimately resulting in receiving a total disability from PERS. He is not available for work under any circumstances. His loss of employment did not result from discrimination. Therefore he is not entitled to front pay.

And, contrary to Plaintiff's contention, *Kramer* is support for the proposition that an ADA retaliation claim does not provide for front pay as a remedy. The court in *Kramer* did an extensive review of both the case law and the language of the applicable statutes. *Kramer*'s conclusion is that the available remedies are back pay and equitable remedies. *Kramer* did not find any other remedies to be available under the statutory scheme for ADA retaliation.

    **C.**    **THE EVIDENCE DID NOT SUPPORT A FINDING OF RETALIATION AGAINST THE PLAINTIFF FOR CONDUCT PROTECTED BY THE ADA.**

Prior to trial, the City of Norwood was granted summary judgment with respect to Plaintiff's claims for age discrimination, sexual harassment, and claims under 42 U.S.C. §§ 1983, 1985 and 1986, as well as claims based on sex, race, color, or religion. (Doc. 68). Only the disability discrimination claims went to trial. Pursuant to Special Verdict No. 1, judgment was granted in favor of the City of Norwood and all individual Defendants against Plaintiff on Plaintiff's claims for disability discrimination. (Doc. 138).

The jury entered a special verdict in favor of Plaintiff against the City of Norwood on Plaintiff's ADA retaliation claim, which is the sole subject of this Motion for Judgment as a Matter of Law. The bases for which a retaliation claim may be made under the Americans with Disabilities Act are limited to conduct discriminating against an individual for opposing an ADA

violation or participating in a proceeding under the ADA. *Sussle v. Sirina Protection Systems Corp.,* 269 F.Supp.2d 285 (S.D.N.Y. 2003). In *Coulson v. The Goodyear Tire & Rubber Co.,* 2002 WL 408872 (6th Cir. 2002), the court said "[T]he ADA forbids retaliation for any act protected by the ADA." The ADA provides in pertinent part:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by **this Chapter** or because such individual made a charge, testified, or participated in any manner in an investigation, proceeding, or hearing under **this Chapter**.  42 U.S.C. § 12203(a). (Emphasis added.)

In *Sussle*, the court dismissed a cause of action purporting to set forth an ADA retaliation claim "because the Plaintiff failed to exhaust his administrative remedies when he did not include the allegations of retaliation and the Charge he filed with the EEOC." The *Sussle* court further noted that it "only has jurisdiction to hear such claims where they were either included in an EEOC charge or are based on conduct subsequent to the charge which is 'reasonably related' to that alleged in the EEOC charge." 269 F.Spp.2d at 314.

Plaintiff herein has failed to present evidence sufficient to establish an ADA retaliation claim under *Sussle* and the plain language of the statute as set forth above. The evidence does not support a conclusion that Plaintiff filed a retaliation claim at any time for activity protected by the ADA. On May 15, 1998, Plaintiff filed an EEOC charge alleging that the denial of a lead man promotion was discrimination "because of my age." (Dx. 553). The charge was based solely upon age. It did not allege disability discrimination.[2] It did not even allege retaliation. Therefore, at that point, based upon the plain language of the ADA retaliation statute, and *Sussle*,

---

[2] The jury determined that there was no disability discrimination against Plaintiff by the City of Norwood at any time.

Plaintiff had neither exhausted his administrative remedies as required for an ADA retaliation claim nor was there evidence sufficient to establish an ADA retaliation claim.

On June 16, 1998, Plaintiff filed another EEOC charge in which he did allege "retaliation" but again he did not allege disability discrimination. He alleged only "retaliation." (Dx. 556). The June 16 retaliation charge refers solely to the May 15, 1998 age discrimination charge. It states in the first paragraph, "I filed a charge of discrimination on 5-15-98." (Dx. 556). His 5-15-98 charge was solely for age discrimination. There is nothing on the form filled out by Plaintiff for the June 16, 1998 EEOC retaliation charge asserting a claim for anything other than "retaliation." There is nothing in the supporting affidavit setting forth the particulars of the charge referencing anything other than the May 15, 1998 charge of discrimination limited solely to age. (Dx. 553). There is nothing on the form or within the affidavit of Plaintiff's June 16, 1998 retaliation charge asserting a claim of ADA discrimination. Based upon Plaintiff's June 16, 1998 retaliation charge (Dx. 556), there is still a failure to exhaust administrative remedies with respect to an ADA retaliation claim, as well as a failure to present evidence of an ADA retaliation claim under the statute.

Plaintiff's so-called amended charge (Dx. 557) also fails to establish an exhaustion of administrative remedies or a basis for a ADA retaliation claim under the statute. The amended charge did not assert a retaliation claim. And it did not allege retaliation for disability discrimination based on the denial of promotion to lead man incident referenced in the May 15, 1998 EEOC charge. (Dx. 553). Rather, it references a separate allegation involving operating a backhoe. Plaintiff agreed not to operate the backhoe in March, 1997 as part of a grievance settlement that he signed. (Px. 1061).

The combination of charges by Plaintiff fails to demonstrate exhaustion of remedies or evidence supporting an ADA retaliation claim because it fails to show that he suffered adverse employment action caused by any ADA protected activity. *Penney v. United Parcel Service,* 128 F.3d 408 (6th Cir. 1997). The May 15, 1998 age discrimination charge does not qualify as ADA protected activity for obvious reasons: it did not allege discrimination for activity protected by ADA. The June 16, 1998 EEOC charge alleging retaliation did not assert a claim of adverse employment activity for ADA protected activity for two reasons. First, it only alleges retaliation for the age discrimination alleged in the May 15, 1998 charge. Second, the conduct which Plaintiff alleges constituted disability discrimination occurred in or prior to May 1998, that is, prior to the filing of the June 16, 1998 retaliation charge. A retaliation claim may not be sustained based upon the **filing** of a charge where the Plaintiff's own evidence is that the discrimination alleged to constitute retaliation occurred before the charge was filed. *Reed v. Bennett,* 244 F.Supp.2d 1205 (D.Kansas 2003). The alleged discrimination by being passed over for a lead man promotion occurred in April, 1998. The alleged discrimination involving a supervisor being ordered to keep a close watch on Plaintiff occurred in April, 1998. Therefore, the June 16, 1999 charge could not be ADA retaliation.

In summary, Plaintiff's claim for retaliation was so vague that the jury understandably did not understand the legal basis for the claim. Plaintiff presented evidence at various points in the trial that he was retaliated against based upon his age, union activity and filing worker's compensation claims. Such claims have either been dismissed on summary judgment or were not subject to this Court's jurisdiction. Plaintiff's Memorandum in Response continues in that same vein. Plaintiff asserts numerous reasons that he believes he was treated poorly, including age

discrimination, union activity discrimination, politics, etc. What Plaintiff does not present, and which was also not before the jury, is evidence of retaliation motivated by ADA protected activity resulting in adverse employment action to Plaintiff. Plaintiff's continued contention in his memorandum in response that he was retaliated against as a result of "protected activity" does not support an ADA retaliation claim unless that protected activity was ADA protected activity.

Assuming for purposes of argument only Plaintiff presented evidence of retaliation because of protected activity under the Age Discrimination and Employment Act, or Title VII, or the Fair Labor Standards Act, or the Workers' Compensation laws, that would not establish an ADA retaliation claim. The evidence is clear that Plaintiff was not discharged or constructively discharged. It is clear that no other form of adverse employment action was taken against him as a result of the filing of a disability discrimination charge.

Plaintiff worked at the City of Norwood until he injured himself in May 1999 while using a weed eater. He made various claims for worker's compensation and was out on worker's compensation leave in accordance with Article 33 of the collective bargaining agreement based upon his own disability claim. Eventually, Plaintiff received a total disability from PERS. As a matter of law, Plaintiff's loss of employment was not ADA retaliation by the City of Norwood. Accordingly, no adverse employment action was taken against him at any time by the City of Norwood based upon any disability claims filed with the EEOC. Therefore, the City is entitled to judgment as a matter of law with respect to Plaintiff's ADA retaliation claim.

## II.  **CONCLUSION**.

For all of the foregoing reasons, Defendant, The City of Norwood, respectfully requests that this Court grant final judgment in its favor on all issues in the within action pursuant to Rule

50 of the Federal Rules of Civil Procedure.

          Respectfully submitted,


          **s/Lawrence E. Barbiere**
          Lawrence E. Barbiere
          Ohio Bar Number: 0027106
          Michael E. Maundrell
          Ohio Bar Number: 0027110
          Attorney for Defendant, City of Norwood
          **SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
          11935 Mason Road, Suite 110
          Cincinnati, OH  45249
          (513) 583-4200
          (513) 583-4203 (fax)
          Email:  lbarbiere@schroederlaw.com


**CERTIFICATE OF SERVICE**

     I hereby certify that on **February 1, 2005,** I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following: Robert G. Kelly, Esq., ***Attorney for Plaintiff***,  W. McGregor Dixon, Jr., Esq., ***Attorney for Joseph J. Hochbein***, James F. Brockman, Esq., ***Attorney for Kevin Cross***, and to Steven Martin, Esq., ***Attorney for Defendant, Gary Hubbard.***


          **s/ Lawrence E. Barbiere**
          Lawrence E. Barbiere (0027106)