UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DENNIS COOK | : | CASE NO. C-1- 02-073 |
| Plaintiff | : | Judge Weber |
| vs. | : | RESPONSE TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S |
| CITY OF NORWOOD, et al. | : | APPLICATION FOR ATTORNEY FEES AND COSTS |
| Defendant | : | |

In responding to the memorandum filed in response to the Plaintiff's application for attorney fees in the within cause of action, the following information is brought to the Court's attention:

Many courts utilize the twelve steps contained in *Johnson vs. Georgia Highway Express Inc.*, 488 F.2d 714 (CA5 1974) to determine the reasonableness of the fee charged.

The twelve steps are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-719. In applying those factors to the application in the within cause of action, the Plaintiff will proceed step by step.

1

1.    The time and labor required: The Defendant Norwood and its management staff utilized its Director of Public Service, Gary Hubbard, and its Superintendent of Public Works, Kevin Cross, to harass the Plaintiff for the period from on or about October 1997 through and including at a minimum the Plaintiff's resignation from the City of Norwood in April 2000.  The Defendant Norwood also used the administrative staff of the City of Norwood, law directors, assistant law directors, secretaries and fellow employees of the Plaintiff, to harass the Plaintiff during the foregoing period.  The Defendant Norwood cultivated a fear of loss of employment amongst its employees if they stepped forward and told the truth about the activities in the City of Norwood.  While Defendant Norwood expended taxpayer monies to harass the Plaintiff, the Plaintiff had only the Plaintiff's attorney to preserve his rights and oppose the actions of the Defendant Norwood and its management team.

2.    The novelty and difficulty of the questions: Plaintiff was dealing with deceitful and corrupt public officials who utilized tax dollars to violate the law.  Further, the Defendant Norwood's preoccupation with getting the Plaintiff led it to engage in a pattern of deceit, lies and false testimony under oath that Norwood refused to admit and actually condoned throughout the administrative and trial aspects of the Plaintiff's claim.  Norwood did not challenge the conduct of its administrative staff at anytime to determine the veracity of their assertions.

3.    The skill requisite to perform the legal service properly: The Plaintiff's attorney spent twenty years in elective office with the City of Norwood and served as the Law Director of the City of Norwood for sixteen of the twenty years, and he was familiar with the management of the City of Norwood, its policies and procedures. The Plaintiff's counsel knew the Plaintiff, his work history and the cronyism employed by Norwood to hire its management team.  The Plaintiff's counsel played by the rules even when confronted with the destruction of evidence, violation of court orders (see initial pretrial conference before Judge Speigel when he instructed Norwood not to tamper or remove items from its computers and Norwood removed documents) by Norwood and the intimidation of witnesses by the City of Norwood. Plaintiff's counsel was required to work endlessly to obtain witnesses who would step

2

forward and tell the truth. The need to obtain the truth from witnesses required the Plaintiff's attorney to eviscerate the halo of sanctity around the management team to expose them for the thugs and reprobates they were to the employees of the City of Norwood. See attached Exhibit 1 to carefully weigh what was represented by Defendant Norwood in the trial and what actually occurred in the City of Norwood prior to the dismissal of the Plaintiff.

4.      The preclusion of other employment by the attorney due to acceptance of the case Counsel for the Plaintiff was required to operate two businesses during the period he represented the Plaintiff. Endless evenings and countless weekends were spent with the Plaintiff in an attempt to keep him employed and to obtain relief for him, while the Defendant Norwood permitted its management team to lie and subvert the truth. While the Plaintiff's counsel sought the truth, the Defendant Norwood encouraged and condoned the obfuscation of the truth. Now its seeks to limit the Plaintiff's attorney's fee because Norwood lied, even though Norwood's disregard for the truth is the exact reason for endless hours of legal work. The Plaintiff's counsel was required to and did expose the illegal activities of the Defendant Norwood, and now the Defendant wants to penalize the Plaintiff's attorney for taking action the Defendant should have taken if it was a responsible and law abiding public body. Plaintiff's counsel essentially worked two jobs to get the Plaintiff relief.

5.      The customary fee: The Court has before it an affidavit from an attorney familiar with employment discrimination who practiced with one of the larger law firms in town. When analyzing the customary fee, the Court should also consider that Defendant utilized five attorneys to represent itself and its management team. The Plaintiff's attorney did what was required. It is a safe to say all the attorneys for the Defendants were paid and their expenses paid in a timely manner when billed. The City of Norwood had a minimum of two attorneys throughout the trial of the case and they were involved in the discovery process. The Plaintiff did not tag team the Defendants because no other attorney would assist without the expectation of payment. The Plaintiff did not have the staff of the City of Norwood to rely on for documents or the production of same. The fee requested is minimal.

6.      Whether the fee is fixed or contingent: The fee was contingent upon success, and the Plaintiff was aware of an hourly rate to be charged in the event of success on his claim.

3

7.    Time limitations imposed by the client or the circumstances: The Defendant Norwood is to be commended as it did keep the Plaintiff's counsel fully occupied during the seven years this case took to get to trial. Plaintiff's counsel was required to work round the clock on the Plaintiff's case on numerous occasions, and the Plaintiff can present numerous witnesses to the foregoing. Plaintiff's worked round the clock to deal with employees of the City of Norwood who were purposely violating the law. Justice was a lost concept on the Defendant Norwood's part.

8.    The amount involved and the results obtained: The amount involved is Two Hundred Thousand Dollars ($200,000.00) greater than any offer received from the Defendant Norwood prior to the trial. The Defendants refused to settle the case and counsel for the City of Norwood stated there will be no settlement. Although counsel for the City of Norwood alludes that chasing the individual Defendants from public office should not be calculated in the award of the Plaintiff's fee, it is an issue the Court should consider as the same management team would, in all likelihood, still be operating the City of Norwood if there lawless behavior was not exposed by the Plaintiff's counsel. Further, the Plaintiff's counsel was also able to bring to the attention of the Defendant Norwood the cost of its behavior by the adjustment of Norwood's liability insurance rate to a much higher level and the increase of its deductible amount for causes of action similar to the Plaintiff's. The result obtained is a benefit to every Norwood employee who is not required to live in fear of a foul mouthed and totally incompetent individual such as Hubbard, a timid individual who will not stand and be counted such as Cross and a mayor, such as Hochbein, who conducts himself like Sgt. Schultz in Hogan's Heroes, i.e. "I see nothing."

9.    The experience, reputation, and ability of the attorneys: Plaintiff's counsel is a practicing attorney with twenty seven years experience, no prior disciplinary action and who worked the case as required within the Plaintiff's limited resources to limit the exposure of his client in the event of an unfavorable outcome.

10.    The "undesirability" of the case: The Defendant Norwood and its management team characterized the Plaintiff as a nut and referred to him as such to numerous employees and throughout the community. It took a seven year ordeal to vindicate the rights of an individual

4

who was a blue collar worker who simply worked and did the best he could for his employer. Plaintiff's counsel eliminated from the calculation the broken windows at his office and broken car window from the Plaintiff's application for fees. The Plaintiff is prepared to detail those activities encouraged by the City of Norwood in the event Defendant Norwood contests the issue. Further, since this case was a governmental entity, the Plaintiff was limited to compensatory damages against Defendant Norwood.

11.     The nature and length of the professional relationship with the client: The relationship has lasted seven years, and there is no end in sight. The Plaintiff's attorney has remained with the client in the face of numerous mental breakdowns and during periods when healthcare providers or witnesses lost their licenses, refused to testify or costs were repeatedly incurred to update reports. The Plaintiff's counsel did not include the "soothing" in the application for fees when Plaintiff's counsel visited the Plaintiff at the hospital, contacted Plaintiff repeatedly by phone to discuss the case with the Plaintiff or the time spent with the Plaintiff after Plaintiff's wife died of a heart attack during the case. The "soothing" referred to by the Defendant is merely conjecture. "Soothing" is far different from explaining to a client evidence needed to present a case and the court process. "Soothing" is similar to the schmoozing utilized by attorneys who practice in areas of defense in many cases to keep an adjuster informed of the case, taking a client to lunch, playing golf with a client, following the instructions of a liability carrier not to pay a settlement when the evidence is obvious, etc. Plaintiff's counsel charged for work performed.

12.     Awards in similar cases: The Plaintiff made a sizable recovery on an award for a retaliation claim. The Defendant Norwood claims success on its motion for summary judgment, but it lost on the retaliation claim. The award was substantial, and the effort to obtain the award was considerable. The award obtained in this case is the highest jury award against the City of Norwood in a civil rights case. A jury award of the amount in this case was never paid in the sixteen years the Plaintiff's counsel served as law director of the City of Norwood or an amount remotely close to the amount awarded in this case. There remains a state claim for discrimination filed August 2, 2000 in Hamilton County Common Pleas Court. The Defendant Norwood should carefully review the order concerning

summary judgment issued in this matter.

The Plaintiff brings to the attention of the Court other matters which the Court should consider in weighing the fee application of the Plaintiff's attorney.

EC 7-1. The duty of a lawyer, both to his client and to the legal system, is to represent his client zealously within the bounds of the law, which includes Disciplinary Rules and enforceable professional regulations.

The Plaintiff's attorney has acted consistent with the foregoing in the representation of the Plaintiff. The Plaintiff's attorney was confronted with a lawless community operated in a lawless manner with heedless indifference to the consequences of the Plaintiff's rights. The Plaintiff's attorney zealously represented the Plaintiff as required by the ethical canons. The opposition to the Plaintiff's application for attorney fees is not unexpected. There has not been one instance in this case where the Defendant Norwood or its management team stepped forward with honesty in its dealings with the Plaintiff, the EEOC or its portrayal of the facts in this case.

The Defendant Norwood opposes the application for fees based on a variety of issues. However, upon examination of the records of the City of Norwood, it is apparent it occasioned all work required by the Plaintiff's counsel because of its intransigence to admit its violations of the law or prolonged the litigation when any reasonable employer would evaluate its position and resolve the case. Specifically, the Court had the opportunity to observe the testimony of the Defendant Hubbard, Cross and the actions of the City of Norwood management team. In examining the records of the City of Norwood, specifically Exhibit 2 attached hereto (a letter from Joseph Mordino, Assistant Law Director of the City

6

of Norwood to EEOC), it is apparent Hubbard was lying to Mordino in an attempt to cover up the removal of the Plaintiff from the operation of the street sweeper after the filing of the Plaintiff's EEOC complaints. The content of Mordino's letter indicates very little if any effort was made to investigate the Plaintiff's claim, and the Defendant Norwood simply adopted whatever Hubbard asserted as the basis for the removal of the Plaintiff without investigation. Although the Plaintiff could not operate the street sweeper because he did not have an air brake endorsement, it did not stop the City of Norwood from promoting Jeff Smith to the position of heavy equipment operator although an air brake endorsement is required for the heavy equipment operator's position and Jeff Smith did not have and still does not have an air brake endorsement. More importantly, attempts to reconcile Cross' testimony at trial that Hubbard removed Cook when Cross was the individual who checked Cook's license, brought it to the attention of Hubbard, and Hubbard suspended Cook immediately after receiving the initial EEOC charge filed by Cook.

Defendant Norwood continued to lie to the EEOC when it submitted its November 20, 1998 letter to EEOC concerning the June EEOC filing and the amended charge against Norwood. Exhibit 3, Timothy Garry letter dated November 20, 1998. Norwood continues to lie to EEOC in an attempt to extricate itself from the charges of discrimination. The medical records of the Plaintiff were in the possession of the Defendant Norwood from Dr. Helm in 1996 concerning medications being taken by the Plaintiff. Additional medical information was in the possession of the Defendant Norwood indicating the Plaintiff's ability to work. The entire issue of the driver license ruse by the Defendant Norwood is so transparent it is almost laughable except for the harm it caused the Plaintiff. In its effort to detail its ever

7

changing position concerning the Plaintiff, the attached notes of Norwood's Assistant Law Director, Stacey Wall, to the Norwood Law Director, Timothy Garry, indicated clearly what Norwood, acting through Hubbard and Cross, wanted: "Gary (Hubbard) said ultimately he wants Cook terminated." Exhibit 1, page 1. Exhibit 1 details further Hubbard's continued lies and misrepresentations to the Norwood Law Department in the third question when it states, "Cook also did not operate the street sweeper for a period of time due to the sweeper getting repaired." id. When examining the next question about the steel tipped shoes, the notes reflect "No warning was given to Cook." id. Evidently no one at the City of Norwood reviewed Exhibit 1 at the time the notes were taken by Stacey Wall of her meeting with Hubbard and Cross and simply stated "How do you resolve your responses to my questions with the content of Exhibit 494."

The EEOC notified the Defendant Norwood "There is reason to believe that a violation of Title VII of the Civil Rights Act of 1964 ... has occurred" and "evidence indicates that a violation fo the Americans with Disabilities Act of 1991, as amended, has occurred." Exhibit 5. The Plaintiff's attorney immediately took action to take steps to resolve the dispute through telephone contact with Defendant City of Norwood's Law Director's office. Exhibit 6. The Plaintiff's attorney followed with a letter to attempt to resolve the Plaintiff's claim. Exhibit 7. The level of cooperation from the Defendant Norwood concerning the resolution of the Plaintiff's claim can be gleaned from another document produced by the City of Norwood between the Norwood Assistant Law Director, Stacey Wall, and Norwood's Law Director, Timothy Garry. Exhibit 4. The letter makes it clear the City of Norwood was in a position to resolve the case involving the Plaintiff and attempted to resolve the case without

8

the involvement of the Plaintiff. id. Even more telling about the Plaintiff's application for fees is the refusal of Norwood to consider the payment of "$6,000.00" to Plaintiff's counsel and it embarked on a scorched earth litigation position with the Plaintiff and now complains about the fee application of the Plaintiff. The simple response is that the Defendant Norwood gambled and lost. Norwood can't be heard to complain at this late date because it occasioned its own damage through its intransigent position in this litigation.

Plaintiff's counsel was required to sift through more than fifteen thousand documents produced by the City of Norwood to expose the duplicity. Resolve one issue and expose the lie, and the City of Norwood simply adopts a different position. Assume the testimony of Defendants Hubbard and Cross in *Perkins vs. Norwood* is truthful and the testimony changed when taken in the Plaintiff's case. Assume the deposition testimony in the Plaintiff's case is accurate, and the Defendants Cross and Hubbard provide conflicting testimony in a subsequent civil case and then contradict all previous testimony with the testimony provided at trial in this case. The target was constantly on the move, and the Plaintiff's counsel was required to read, review and be prepared for whatever new story came from the lips of Cross and Hubbard.

Finally, the Plaintiff has attempted to resolve this case on numerous occasions with the Defendant Norwood. At the time of Cook's deposition in September 2002, counsel for the City of Norwood, Michael Maundrell, advised the Plaintiff's attorney "There will be no settlement in this case." Mr. Maundrell's words became prophetic as there was no settlement in this case, and the Defendant Norwood is paying more than it ever offered in this litigation until after the trial. Norwood is also facing litigation in state court on age and

9

retaliation and other charges filed on August 2, 2000 in Hamilton County Common Pleas Court when the EEOC took an inordinately long time to issue a right to sue letter to the Plaintiff. The delay was occasioned by Norwood's attempt to backdoor the Plaintiff by meeting with the EEOC without the participation of the Plaintiff to settle the Plaintiff's claim in violation of law.

The Plaintiff's attorney took the facts as presented and dealt with the past conduct of the Defendant Norwood and its management team. The Plaintiff's attorney weathered numerous attorneys thrown at him by the Defendant Norwood throughout his representation of the Plaintiff.[1] In dealing with the past conduct and the facts as the Plaintiff's attorney found them, the actions of the Plaintiff's attorney in representing the Plaintiff were necessary and beneficial to the Plaintiff. The most apparent and almost transparent issue in the Defendant's opposition to the Plaintiff's application for fees is Norwood's opposition to charges related to dealing with attorneys hired by Norwood to represent its management team. Norwood chose to utilize multiple attorneys on behalf of the named Defendants in the within cause of action for its management personnel and itself. The actions of all the attorneys was the same: litigate, litigate and litigate.[2] Norwood has received exactly what it wanted: protracted litigation. The only thing it may not have considered is the desire of the

---

[1] The City of Norwood utilized the services of three directors, Timothy Garry, Victoria Garry and Rick Gibson, four assistant law directors, Joseph Mordino, Stacy Wall, Patia Tabor and Ted Kiser, outside counsel, James K. L. Lawrence, Gary Hall, Michael Maundrell, Lawrence Barbiere, MacGregor Dixon, Steven Martin and James Brockman to represent the interests of the City of Norwood or its employees throughout its dealings with the Plaintiff Cook.

[2] Attorneys for Cross and Hubbard informed the Plaintiff's attorney there clients did not have any money for settlement.

Plaintiff to see justice done. The Defendant Norwood argues about fees, but it had no difficulty retaining three separate attorneys for the individual Defendants along with two attorneys for the defense of the City of Norwood in this action. Five attorneys filed multiple motions attempting to demonstrate the acts of the Defendants were compliant with the law, that the acts forming the basis of the Plaintiff's claim did not occur or the Plaintiff was simply a disturbed individual who was destined for a breakdown without the assistance of the Defendants. The Plaintiff was required to address the individual motions and the tag team approach utilized by the Defendants in the presentation of their case. While the Defendant Norwood complains about the Plaintiff's attorney responding to various motions, the Court had the opportunity to observe the trial of this action and the Defendants utilization of its team approach in its attempt to defeat the Plaintiff's claim. Norwood utilized five attorneys to defend its actions and the Plaintiff one. The protracted litigation chosen by Norwood led to the increased fees and expenses, the alternative was to give Norwood the green light to do as it pleased.

In examining the Plaintiff's request for fees, the Court is required not only to consider the applicable case law but also is required to consider the obligation of an attorney pursuant to ethical canons. Specifically, the Court should recognize "The responsibilities of a lawyer may vary according to the intelligence, experience, mental condition or age of a client, the obligation of a public officer, or the nature of a particular proceeding." EC 7-11. The Court had the opportunity to observe the demeanor of the Plaintiff and recognize the "eggshell nature" of the Plaintiff and the acts visited upon the Plaintiff by the Defendants. The Defendant Norwood calls the acts of the Plaintiff's attorney "soothing," and the Plaintiff's

11

attorney recognizes his responsibility to his client due to his mental condition and the need to take additional steps to assist his client in the understanding of the court proceedings. What the Defendant touts as soothing, the Plaintiff's counsel recognizes as his ethical obligation to a client within the bounds of the ethical canons and especially to a client who has suffered hospitalizations on at least four occasions as the result of the Defendant Norwood's actions. What the Defendant Norwood claims is soothing only reflects the difference between a callous and indifferent attitude by the City of Norwood towards the Plaintiff and the recognition by Plaintiff's counsel to treat the Plaintiff with decency and to explain why his case took approximately six years to resolve from the time he filed his initial complaint. Is it soothing to attempt to explain to a client how the Defendant Norwood can assert the Plaintiff's testimony is competent for summary judgment but incompetent for the purpose of trial? The wheels of justice grind slow and when the City of Norwood is involved, its attorneys are readily available to slow them down even further and toss in a wrench when necessary to bring them to a halt.

Examine the deposition of the Plaintiff taken over two days and attempt to discern the benefit to the Defendant Norwood or any of the Defendants from the questions elicited except to aggravate the Plaintiff and attempt to drive the Plaintiff over the edge. There is nothing contained in the deposition which is illustrative of anything to evidence the actions of the Defendant Norwood were reasonable or arguably within the bounds of the law. The Defendant Norwood's purpose in the deposition was clear.

The ethical canons also recognize the special responsibility of an attorney when representing an individual with a disability. EC 7-12. Specifically, the ethical canons

recognize the "additional responsibilities" upon a lawyer representing a client with any mental condition that renders him incapable of making a considered judgment. The lawyer has the additional responsibility to consider all circumstances then prevailing with a client and act with care to safeguard and advance the interest of his client. The ethical canons recognize the unique responsibility of a lawyer in circumstances faced by the Plaintiff's attorney. However, the Defendant Norwood continues to live in a world devoid of any sense of decency by its attempt to oppose the application for fees based on conduct the Defendant Norwood had the authority to halt but instead chose to continue. The Plaintiff's counsel performed services necessary to enable his client to understand the process and make sure of the Plaintiff's ability to participate in the process.

The Plaintiff's lawyer has responsibility pursuant to the ethical canons to discharge his duties in a specific manner, and the Defendant Norwood's attorneys has a similar obligation to discharge their duties. EC 7-14. Norwood's lawyers have an obligation to "refrain from instituting or continuing litigation that is obviously unfair." The Court need only examine Exhibit 494 to determine if any reasonable interpretation of the foregoing exhibit could lead to a conclusion other than retaliation by Norwood against the Plaintiff. When viewing the arguments of the Defendant Norwood, the obligation of the City of Norwood's attorneys is "to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results." id. The Court presented with the opportunity to view the entire record and the evidence in the foregoing matter is in a position to make its own determination concerning the issues and make a determination if the actions of the Plaintiff's

attorney were reasonable based on the response of the Defendant Norwood to the within cause of action.

The Defendant Norwood objects to the Plaintiff's attorney charges for actions related to criminal proceedings involving the Plaintiff. The actions of the Plaintiff's attorney were performed within the ethical canons and were designed to prevent the use of "the criminal process to coerce adjustment of private civil claims or controversies" which is a subversion of that process. EC 7-21. The Plaintiff's attorney recognized that his client's opportunity to use the civil process to redress his claims against the Defendant Norwood in a civil process was deterred by the Defendant Norwood's attempt to misuse the criminal process against the Plaintiff. The Plaintiff's attorney was attempting to preserve the integrity of the legal system as the Defendant Norwood and its management team abused the judicial process within its little bailiwick. The misuse of the authority of the Defendant City of Norwood and its management team was palpable.

The Defendants are correct and there is an addition error and the Plaintiff does not oppose the modification of its application for the addition error cited by the Defendant. The Defendant Norwood's contention of claims against the other Defendants is spurious at best. Norwood hired the individuals and their acts were all part and parcel of the case against Norwood. Norwood employed the Defendants and to the extent their actions were unsupervised or overlooked, the Defendant Norwood is liable for their actions. The Plaintiff fought the entire team from Norwood. Five attorneys attempting to prove fact was fiction. Plaintiff prevailed on his claim. All the criminal charges against the Plaintiff originated in the City of Norwood, and the charges were instituted by City of Norwood employees. The

14

Plaintiff's counsel represented the Plaintiff on every charge asserted, and the Plaintiff was not convicted on any charge where the Plaintiff's counsel represented the Plaintiff. Further, no criminal charges were asserted against the Plaintiff until after he filed his EEOC charges. The City of Norwood should produce some evidence that some form of criminal activity took place prior to the Plaintiff filing his EEOC complaint and the Plaintiff will withdraw the request for fees as to the criminal charges occurring prior to the filing of the EEOC complaint.

The Court specifically stated to not include items which were not attributable to the claims presented in the Court. The Plaintiff's attorney only included those items related to the case before the Court. If the Defendant Norwood wants to pay for the unfair labor practice charges and other work, the Plaintiff will submit an additional bill. To stop the illegal retaliation of the Defendant Norwood required the Plaintiff to use every means at his disposal. The Defendant Norwood's employees lied throughout to numerous agencies to prevent the Plaintiff from obtaining relief from the conduct of the Defendant Norwood. The Defendant's attention is invited to paragraph 31 of the complaint to view actions which occurred after the Plaintiff filed his EEOC complaint. The fact Norwood makes a statement does not mean it is true it merely indicates everyone should scrutinize the statement, since it is in all likelihood false, much the same as its assertion concerning the retaliation issue.

There are no soothing hours contained in the Plaintiff's application. The Plaintiff's counsel worked with the Plaintiff on numerous occasions when the Plaintiff discussed or reflected on the possibility of taking his own life. The Plaintiff's counsel did not charge for numerous hours working with the Plaintiff concerning the status of his case, arranging for

loans from various individuals for the Plaintiff to support his family and contacting the Plaintiff on numerous occasions concerning the status of his case or preventing him from acting on his feelings. More importantly the Plaintiff's attorney could double the hours involved if all activities involving the Plaintiff were included in the fee statement. The Plaintiff's counsel realized early on in the case that the Plaintiff's mental health was an issue from the repeated acts of the Defendants' employees. The mental state of the Plaintiff required the Plaintiff's counsel to take additional steps to make sure the Plaintiff was aware of the proceedings and understood the process. The Plaintiff's counsel took the same steps as he would in any case to make sure a client understood the process and he/she was aware of the process. Counsel can only assume the alternative is to do as he thinks best and place himself in a position of jeopardy by a refusal to keep the client informed. Such a course of action is in violation of disciplinary rules. Essentially, the Defendant Norwood is encouraging the Plaintiff's counsel to violate the disciplinary rules through the arguments presented.

The allegation the Plaintiff's counsel is charging the Plaintiff for work performed on other cases is preposterous. The Defendant in its zeal should also inform the Court the Defendant Norwood did the same thing to Roger Perkins and Dennis Jones, as it did to the Plaintiff, when they filed EEOC charges. Plaintiff in this case utilized the same expert, Brookshire, in the Jones and Perkins cases. The information requested was prepared on each one of the individuals, and the information submitted was different for each one.

The basis for the fee charged is the Plaintiff's counsel's work. The Plaintiff's counsel does not have the luxury of contacting a junior attorney to pick up his case files at the

conclusion of a trial in the same manner as the Defendant Norwood's counsel in this case. The Plaintiff's counsel billed for services he required. In the event the Plaintiff had utilized a paralegal or another attorney to be a gopher, the cost in this case would have been staggering. Defendant Norwood actually benefitted from the Plaintiff's counsel's knowledge of the ilk the Defendant Norwood employed and the citizens of Norwood elected. Many of the hours complained of by the Defendant Norwood are the result of theories advanced by Norwood which were as porous as a sieve. In particular the driving records were obtained because Norwood asserted the Plaintiff was removed from operating the street sweeper because Plaintiff did not have the proper license. The Plaintiff was required to obtain the driving records of all employees because Norwood was asserting a lie. Norwood offered one lame excuse after the next and when Plaintiff's counsel sifted through the lies, Norwood still refused to come clean. The testimony of Hubbard at trial of "Call Before U Dig" marking Edmondson Road was an additional lie the Plaintiff's counsel ferreted out and when confronted with the facts, Defendant Norwood and the other Defendants whined about the records of Call Before U Dig which proved Hubbard's testimony was a lie. Norwood needs to face the facts in this case and realize it was a lying cabal during the reign of Hochbein.

It is reasonable to charge for services for delivering medical records because Plaintiff's counsel accumulated the records, reviewed the records and got them to Friertag when the case was being investigated and wallowing at EEOC. EEOC was dragging its feet on the Plaintiff's complaint, Norwood is lying to EEOC and the Plaintiff's counsel is dealing with a client with emotional problems. The simple answer to Norwood is: Plaintiff's counsel responded promptly to a request by EEOC to further his client's goal. Plaintiff's counsel did

what was required to produce information to EEOC to find probable cause.

The issue with the 2/2/02 entry when the complaint was filed is laughable. The complaint was reviewed with the Plaintiff prior to filing. Each issue was reviewed and changes made to get the complaint filed. A trip to the courthouse, back and forth, takes approximately one hour. The need to explain the complaint and the client to understand what he is signing is another matter.

The Defendant Norwood knows the discovery deadline in this matter. The Plaintiff's counsel obtained information from Calderon because it was the deadline for the delivery of the experts' reports. If the Plaintiff failed to comply with the deadline, the information could not be used.

The Plaintiff's counsel transmitted all experts' reports to opposing counsel on the deadline date by mail and fax. The fax machine at Dixon's office disconnected in the middle of a transmission. The fax machine at Dixon's office would not pick up for a transmission after the disconnection. The Plaintiff's counsel did what was required to comply with the Court's order. In much the same manner, any items hand delivered to opposing counsel were delivered because opposing counsel wanted the documents.

Defendant Norwood's assertion the trip to Florida is an overcharge is simply a half truth. The witness (Dennis Jones) is a former employee of the City of Norwood who filed EEOC charges against Norwood, resolved his claim with Norwood and moved to Florida. Jones would not cooperate with the Plaintiff or voluntarily appear on behalf of the Plaintiff because of his fear of the City of Norwood. The real issue is: "What prevented Jones from cooperating with a fellow employee?" Norwood has the information and once again steps

18

forward with half the story. Norwood needs to tell the truth and detail why Jones and Perkins would not appear without a subpoena, why they refused to cooperate or discuss their cases with the Plaintiff. The simple answer is: Norwood. Jones actually hid from the Plaintiff's counsel when the subpoena was attempted to be served.

The exhibit books were prepared with my client and it was part of the trial preparation with my client in advance of the trial date in June 2004. Mr. Cook was present during the preparation of the exhibit books. The Defendant Norwood can prepare for trial as it deems appropriate, but the manner and method of preparation by the Plaintiff cannot be controlled by the Defendant.

The revised exhibit lists complained of by Norwood were requested on a Friday and had to be submitted. The Defendant Norwood did the same thing as the Plaintiff by failing to follow the Court instructions, and Norwood was required to submit a revised exhibit list. Additionally, exhibit books are not going to be changed without Plaintiff's counsel knowing all the particulars immediately prior to trial.

The premature appeal charges can be eliminated. The directed verdict research was done in response to Norwood's anticipated request for a directed verdict. Once the research was conducted to oppose Norwood the Plaintiff's counsel decided to move forward on the issue on behalf of the Plaintiff. The research was the same.

## EXPENSES

The documentation for the expenses incurred by the Plaintiff is attached hereto as a collected Exhibit 8. There is a calculation error in 2001 as the payment to Parsons was $120.00 and not $125.00. There is a calculation error in 2002 as the payment to Princeton

High School on 11/4/02 was $3.35 and not $3.55 and the Plaintiff is unable to locate the receipt for the Fed Ex charge on 6/19/02 and therefor $12.50 should be deleted. The calculation for 2003 should be $4,239.72 as an error was made in the addition and the entry dated 3/17/03 for delivery of items is being deleted as it was a cash payment and no record was kept except on the time record. The calculation for 2004 should be reduced to $15,619.74 as the expense record for 10/1/04 cannot be located and the expense record for 10/29/04 cannot be located. All expense documentation is attached.

### TIME RECORDS

When the Defendant Norwood asserts time records were not kept by the Plaintiff's counsel it is incorrect. A wild stab in the dark to further attack Plaintiff's counsel. The records were maintained on a computer and produced. The fact the Plaintiff's counsel cannot produce records it does not have does not prove the Defendant's argument. The Defendant can maintain its records and bill as it chooses. If its client does not object its bill will be paid. Plaintiff does not object to the fee statement submitted by Plaintiff's counsel and the Defendant is simply attempting to limit its exposure.

/s/Robert G. Kelly
Robert G. Kelly          0002167
Trial Attorney for Plaintiff
4353 Montgomery Road
Norwood, Ohio 45212
1-513-531-3636
1-513-531-0135 fax
rgkfskgreg@aol.com

### CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was served upon the following individuals Lawrence Barbiere, Esq., Attorney for City of Norwood, W. McGregor Dixon, Esq., Attorney

for Joseph Hochbein, Steven Martin, Esq., Attorney for Gary Hubbard, and James F. Brockman, Esq., Attorney for Kevin Cross, through the ECF system of the United States District Court, Southern District of Ohio and sent by regular mail, postage prepaid to all who are not listed to receive filings through the ECF system this 5th day of April 2005.

/s/Robert G. Kelly
Robert G. Kelly