EXHIBIT 1, PAGE 1

To: Tim
From: Stacy
Date: November 24, 1998
Re: Notes from meeting with Gary Hubbard and Kevin Cross

Gary and Kevin do not want the discipline taken off of the employee's records. They believe that if you do it for these individuals then you are going to start having to do it for everyone. There are two unions and they do not have any problems from anyone except for the four (4) individuals in question. Gary and Kevin believe that basically the problem is that these guys have worked for the City for a long time without many rules. When new people came in and changes were made, these guys didn't want to follow the new rules and policies.

I. Cook

Q: What result are you seeking from the mediation?
    A: Gary said ultimately he wants Cook terminated.

Q: Have there been any other similar circumstances to Cook's situation where the employee did not have to submit to an independent medical examination?
    A: No.

Q: Did medical report state that Cook could no longer operate the street sweeper?
    A: No. The report stated that Cook was on five (5) different medications. Gary asked Joe Mordino to look into these meds. The medications apparently did not permit operation of a vehicle. Cook was asked about the medications to which he only responded to two (2) out of the five (5) meds.
    Even though Cook was taken off of the street sweeper, he did not receive a demotion nor a cut in pay. Cook was paid as a street sweeper even though he was working as a laborer. Cook had an improper license on 5-20-98 and was permitted to drive again on 6-1-98. Cook also did not operate the street sweeper for a period of time due to the sweeper getting repaired.

Q: Is it standard procedure for an employee to use a city vehicle (to travel to doctor)?
    A: Gary allowed Cook to use a city vehicle to travel to the doctor the first time. The second time Cook was not permitted to use a city vehicle because Cook was on the meds which said that he should not operate a vehicle.

Q: Was Cook given a warning about wearing steel toed boots?
    A: Cook was told he did not have on the proper shoes. He was told to change his shoes or go home. Cook chose to go home. No warning was given to Cook.

Q: Was Cook refuse training on the safety manual?
    A: No. There is no training for the manual. You read the manual and it is self explanatory. The manual even has pictures demonstrating the proper procedure.

NOR 05563

Q: Was Cook disciplined for not wearing a painter's mask when saw cutting a street?
    A: No. Cook was told to wear the mask as a safety precaution since the area was extremely dusty. Cook was not reprimanded.

Q: Did Gary backdate an amendment to the safety policy?
    A: The policy was not backdated but amended.

Q: Was there a gun and baseball bat in the hearing room?
    A: Yes. The baseball bat was brought in by Erwin. The gun was in the room from standard procedure when the police cars are brought in for servicing. The shells were locked up at the time and in a different location from where the gun was.

## II. Erwin

Q: Did you (Gary and Kevin) refuse to bargain with the bargaining unit concerning eliminating the Craftsman/Leadman position?
    A: No. What happened was the contract called for five (5) C/L positions. We had six (6) so one had to be eliminated. Erwin was the union president and knew of this change. Erwin picked the position knowing that it would be eliminated.

Q: Were Erwin's wages docked in August in violation of the bargaining agreement?
    A: No. Erwin had been overpaid so his pay was adjusted according to the pay scale. Erwin was not docked any wages.

Q: Have junior and unqualified men been appointed to leadman position?
    A: No. A job is posted for ten (10) days. Anyone can sign up for the job. The seniority can pick the position if they choose. The jobs Erwin has complained about were not picked by any seniority and Erwin himself did not sign up for the position.

*Kevin stated that Cook complained that he had medical problems and could not operate the jackhammer, etc. The first time Cook brought any type of medical slip in concerning this problem was on or about July 27 which was at least two (2) weeks after Cook had filed his complaints.

## III. Jones

1. Jones left a message on the machine stating that he quit. He did nothing from August 14th until August 28th. Jones said that he was in the hospital; however, Jones lived with his sister who did not know that Jones was in the hospital.

2. Jones has a history of violence at work. Coplan (former supervisor) filed a police report against Jones for making a threat against him. Jones also had to pay for a windshield he broke by throwing a shovel through it.

NOR 05564

3. Paul Bazzano ordered Jones to attend an anger management seminar on 8-13-98. (Jones resigned 8-14-98. Gary thought that perhaps the anger management was what really made Jones mad and fired him up enough to quit.)

4. Perkins was Jones' leadman. Perkins stated that Jones was crazy.

5. There was an incident where Jones through a letter addressed to Randy Harris in regards to Harris' vacation in Kevin's face. Jones thought that based on the letter, Jones would not get his vacation. The letter was only about Harris' vacation but Jones got mad about it assuming somehow his vacation would be affected.

### IV. Perkins

1. Perkins wanted to get rid of Cook. Perkins went to Gary and asked him if Gary could help remove Cook. Gary told Perkins he could type up a petition form for Perkins if he wanted. Gary did not say that he could help get rid of Cook but simply would have his secretary type up a form.

NOR 05565



EXHIBIT 2, PAGE 1

## Department of Law

TIMOTHY A. GARRY, JR.
LAW DIRECTOR

JOSEPH T. MORDINO
Assistant Law Director

NORWOOD CITY HALL
4645 MONTGOMERY ROAD
NORWOOD, OHIO 45212
TELEPHONE: 513-396-8155
FAX: (513) 396-8157

June 25, 1998

Ms. Helen B. Glutz
Cart Team Leader
Equal Employment Opportunity Commission
Cincinnati Area Office
525 Vine Street, Suite 810         Via Fax No. 684-2361
Cincinnati, OH 45202-3122          & Regular U.S. Mail

City of Norwood's to
Statement of Position and Response
Request for Information
Charge No. ▓▓▓▓▓▓▓▓

Dear Ms. Glutz:

Please allow this to serve as the City of Norwood's Response to the Equal Opportunity Commission's request for information in the above-referenced case and please allow it to serve as a Statement of Position in the above-referenced case.

**Question No. 1** requested the correct name and address of the facility named in the charge.

The correct name and address of the facility named in the charge is City of Norwood Department of Public Works whose address is 3001 Harris Avenue, Norwood, OH 45212.

Paragraph I of Mr. Cook's Charge of Discrimination indicates that on April 20, 1998, Mr. Cook was called into a City office and given a letter stating that his commercial drivers license did not contain the necessary endorsements in order to allow him to operate the City streetsweeper. The date alleged in Mr. Cook's complaint, is incorrect. That incident actually occurred on May 20, 1998 and a copy of the letter referred to is attached hereto as Exhibit A. A copy of Mr. Cook's commercial drivers license is attached hereto as Exhibit B. Please note that the license

"*Gem of The Highlands*"

NOR 05046

EXHIBIT 2, PAGE 2

Ms. Helen B. Glutz
June 25, 1998
Page 2

indicates that Mr. Cook is not permitted to operate a vehicle with air brakes. Please note that the City's streetsweeper is equipped with air brakes.

The City's response to Paragraph II of Mr. Cook's Charge of Discrimination is that Mr. Cook's license did, in fact, have restriction "L" indicated on the license. A review of the license restrictions shows that restriction "L" means that a person is prohibited from operating vehicles with air brakes.

In response to Paragraph III of Mr. Cook's Charge of Discrimination, the City denies discriminating against Mr. Cook because of the previous charge of discrimination filed against the City. The City received notice of the problem with Mr. Cook's license on or about May 18, 1998 from Kevin Cross.

The City denies that it has a responsibility to assist Mr. Cook in getting a new commercial drivers license. Other employees who are allowed to take out City trucks to take driving tests while "on the clock" are employees who were hired by the City of Norwood when the requirement of obtaining a commercial drivers license was a condition of obtaining employment. When Mr. Cook was hired, no such requirement was in place.

Mr. Cook alleges that other employees have never been asked to present a drivers license and that those employees are operating motor vehicles. If Mr. Cook is concerned that unlicensed drivers are operating City vehicles, he should present those names to the administration. If Mr. Cook was concerned about Mr. Lacinak operating vehicles with air brakes even though Mr. Lacinak does not have an air brake endorsement, he should have put the administration on notice of that problem or gone through that union to address the situation with the City. As of the date of this letter, the City has begun an investigation into these allegations. However, it is the City's position that the mechanics need not have a Commercial Drivers License to repair or work on vehicles on "private" property, i.e. not on roads.

At the current time, Mr. Cook's drivers license status is "Class A - no restrictions."

By way of conclusion, Mr. Cook's Notice of Charge of Discrimination indicates that he believes that the City has violated Title 7 of the Civil Rights Act of

NOR 05047

EXHIBIT 2, PAGE 3

Ms. Helen B. Glutz
June 25, 1998
Page 3

1964, the Age Discrimination and Employment Act of 1967, and the Americans with Disabilities Act. However, the Statement of Fact contained in Charge No. ▮▮▮▮▮ does not contain any facts indicative of any kind of discrimination. He states a charge of retaliation, however, he does not deny that there was a problem with his drivers license and that the problem was one that affected his ability to legally operate City equipment.

If you have any further questions about this matter, please do not hesitate to contact the Law Department.

Sincerely,

*Joseph T. Mordino*

Joseph T. Mordino
Assistant Law Director

JTM:bko

Enc.



TIMOTHY A. GARRY, JR.
LAW DIRECTOR

STACY M. WALL
ASSISTANT LAW DIRECTOR

# DEPARTMENT OF LAW

EXHIBIT 3, PAGE 1

NORWOOD CITY HALL
4645 MONTGOMERY ROAD
NORWOOD, OH. 45212
TELEPHONE: (513) 396-8155
FAX: (513) 396-8157

November 20, 1998

Mr. Jack Patrick
Investigator
Equal Employment Opportunity Commission
525 Vine Street, Suite 810
Cincinnati, OH 45202-3122

    Re: Response to Request for Information
        Charge Nos. ▓▓▓▓▓▓ and ▓▓▓▓▓▓ (amended)
        Dennis Cook v. City of Norwood

Dear Mr. Patrick:

This letter serves as a response to your request for information sent to the City of Norwood.

Question One requested all medical documentation submitted to the City relating to Mr. Cook's medical disability. The City of Norwood has been unclear as to what "medical disability" Mr. Cook claims. His discrimination charge goes no further than to reference a "perceived disability." In a November 17, 1998, telephone conversation, you indicated that the City should submit any documentation predating his charge and relating to or providing notice of a back injury, which you understand is the alleged disability. The City possesses 1996 general correspondence relating to Mr. Cook's workers' compensation claim and recent correspondence from April 1998, relating to a reopening of the prior award. Following the 1996 claim, Mr. Cook returned to full duty without medical restrictions. The only medical documentation is a 1996 medical evaluation by Janet W. Cobb, M.D, for the Bureau of Workers' Compensation proceedings, and a doctor's "return to work" note dated April 17, 1998. This recent document indicated that Mr. Cook could return to work without restriction after a one-day absence for sick leave. The City has no other medical documentation for the relevant period of the charge, although you have indicated that Mr. Cook has already

*"Gem of The Highlands"*

NOR 05055

EXHIBIT 3, PAGE 2

Mr. Jack Patrick
November 20, 1998
Page 2

provided you with some medical documentation. Enclosed is Exhibit A, the April 17th physician's note; the City can provide you with the 1996 medical document if so desired.

Question Two requested a list of Mr. Cook's fellow crew members. The list as requested is as follows: **Jim Grubb**, male, caucasian, age 35, Laborer; **Randy Harris**, male, caucasian, age 45, Truck Driver; **Dennis Jones**, male, caucasian, age 44, Laborer / Truck Driver; and **Leo Osterday**, male, caucasian, age 24, Leadman.

Question Three inquired as to the identity of other employees allowed to use city trucks when taking their driving tests on the clock. These employees are as follows: **Mike Dykes**, male, caucasian, age 36, Truck Driver; **Leo Osterday**, male, caucasian, age 24, Leadman; **Larry Partin**, male, caucasian, age 38, Truck Driver; **Tony Pennington**, male, caucasian, age 32, Truck Driver; **Jeff Smith**, male, caucasian, age 23, Heavy Equipment Operator; and **Clint Zimmerman**, male, caucasian, age 23, Water Laborer II.

Question Four asked for submission of other relevant information. As mentioned in our June 25, 1998, letter to Ms. Glutz, Mr. Cook's drivers license had a restriction which made it _illegal_ for him to operate the City street sweeper which has air brakes. The City of Norwood had assisted certain employees in earning the C.D.L. _as_ they obtained employment and as a condition of such employment. Already employed by the City, Mr. Cook did not require this accommodation by virtue of being "grandfathered" into the C.D.L. license status. When he changed his restriction status (at least as early as February, 1996), he was no longer legally able to operate the #472 street sweeper but still eligible to operate other vehicles including a street sweeper without air brakes. After the City's belated discovery of this, Mr. Hubbard informed him of his restriction on May 20, 1998. Mr. Cook chose to retake the licensing test on May 27, 1998, _never asking to use a City vehicle or even notifying his supervisor, Kevin Cross, of his intent to take the test_.

Throughout the relevant time period, Mr. Cook continued driving City vehicles and other equipment. Daily logs _handwritten by Mr. Cook_ confirm his operation of the street sweepers during the time he alleged the City prevented this. In fact, Mr. Cook did operate another street sweeper without air brakes (#471) during the

EXHIBIT 3, PAGE 3

Mr. Jack Patrick
November 20, 1998
Page 3

    time he was limited from operating #472. On May 29, 1998, Mr. Cook notified the City of his new license status without the air brake restriction. From June 1-15, his daily logs show he again operated street sweeper #472. On June 16, the #472 sweeper was taken off line for repair of mechanical problems and not replaced until July. Of no small significance, this date coincides with Mr. Cook's filing his charge of discrimination for not being allowed to operate this vehicle. (Of additional interest might be that #472 is air-conditioned and, hence, so desirable a vehicle for Mr. Cook.) The City is willing to provide copies of any relevant documentation if so desired.

    Thank you for your assistance to the Law Department in regard to this investigation. If you have any further questions about this matter, please do not hesitate to contact us.

                        Sincerely,

                        Timothy A. Garry, Jr.
                        City Law Director

TAG:bko

Enclosure

NOR 05057

EXHIBIT 4, PAGE 1

October 11, 1999

Timothy A. Garry, Jr.
Law Director
City of Norwood             **CONFIDENTIAL**

### Re: EEOC proposed settlement

Dear Tim:

There are several aspects of the proposed settlement agreement that I think we should discuss before meeting with the EEOC. I think that it might be more productive to meet with the EEOC representative alone rather than in the presence of Bob Kelly and Dennis Cook.
In general, although I don't think the City violated any of the rights that Cook has alleged, it would probably be more beneficial to enter into an agreement with the EEOC for purposes of concluding the matter rather than continuing to fight it. I believed out of the three potential federal lawsuits, Cook's was the most damaging to the City.

The strong point of the agreement is that by signing the agreement there is <u>no admission</u> of any violation of the laws the City has been charged with. Another strong point is that the agreement states that the charging party agrees not to sue with respect to any allegations in the charge. I think this should severely hamper Cook's SERB activity. It may also have an impact on Bob Kelly's most recent appeal of the Settlement Agreement. Part of the allegations in the SERB charge that was settled involved the release of Cook's medical information. I think it should be specified in the agreement with the EEOC that Bob must withdraw his appeal of the Settlement Agreement with regards to Cook's charges.

There are some parts of the agreement that need clarified. For example, the agreement is to be in effect for three years. The EEOC should be made aware that in the near future, the City may have an entirely different administration. The agreement refers to the Respondent as the City of Norwood. The departments involved are Public Works and Service so I would think the agreement should refer to those departments rather than the entire City. There is a substantial difference in the burden put on the City if every employee of the City is to receive training or just those employees at Public Works. The agreement states that Respondent is to provide training to its employees. It does not specify where we are to get the training material or if we could have an outside source conduct the training. There are also several reporting requirements. It should be specified in the agreement who is responsible for reporting to the EEOC. I don't necessarily think it should be the law department's responsibility to prepare the required reports but maybe that is

NOR 05016

EXHIBIT 4, PAGE 2

the best way to ensure the reports are timely completed.

    The third major item is the damages. Compensatory damages are $10,840.00. I do not have a problem paying these damages for the fact that this payment would take the smoke out of Bob Kelly. He has consistently claimed that his clients are entitled to anywhere between $750,000 and $2,000,000. If the EEOC finds that the claim is only worth $10,000, it gives stronger argument for not settling on the Perkins and Jones cases unless it is for a minimal amount. We do need Council's approval. The problem I foresee with Council is approval of the attorney fees. I do not understand how Bob Kelly's fees are $6,000. I believe he charges $180/hr. At that rate, Bob had to have put in over 33 hours in filling out the charge he filed with the EEOC. The 33 hours seem padded. I think we should ask for an analysis of Bob's time.

    Bob called and left a message saying to call right away to discuss the agreement. I am not inclined to call him since the agreement says that we will be contacted by the EEOC to discuss the agreement. Please give me your thoughts on the matter. I will let you know when I have been contacted by the EEOC. When we received the initial response from the EEOC stating that there was reason to believe there was a violation, we sent that letter to our insurance carrier. Should we involve them in this agreement?

                                      Sincerely,

                                      Stacy

NOR 05017



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Cincinnati Area Office

525 Vine Street, Suite 810
Cincinnati, OH 45202-3122
PH: (513) 684-2851
TDD: (513) 684-2074
FAX: (513) 684-2361

August 13, 1999

Stacy M. Wall
Assistant Law Director
Norwood City Hall
4645 Montgomery Road
Norwood, OH 45212

EXHIBIT 5, PAGE 1

Re:   Dennis J. Cook v. City of Norwood
      Charge No.:

RECEIVED
AUG 16 1999
CITY OF NORWOOD
LAW DIRECTOR'S OFFICE

Dear Ms. Wall:

Thank you for your patience and cooperation in the above referenced charges of employment discrimination. The investigation of these charges is now coming to a close.

Based on the information gathered during the investigation of these charges, there is reason to believe that a violation of Title VII of the Civil Rights Act of 1964, as amended, has occurred in that Respondent retaliated against Charging Party for filing charges of employment discrimination. In addition, the evidence indicates that a violation of the Americans with Disabilities Act of 1991, as amended, has occurred in that Respondent failed to keep Charging Party's medical condition confidential.

Title VII- Retaliation

The evidence reveals that Charging Party engaged in protected activity on May 15, 1998 and June 16, 1998, when he filed charges of discrimination with the Commission. On July 13, 1998, Respondent took adverse action against Charging Party by informing Charging Party that he was required to attend a scheduled appointment with a Psychologist on July 15, 1998. This information was communicated to Charging Party in a letter written by Gary Hubbard, the Director of Service for the City of Norwood.

There is evidence that retaliation was a motive for Respondent requiring Charging Party to attend a scheduled appointment with a Psychologist. This evidence establishes the necessary link between Charging Party's protected activity and the adverse action taken by Respondent. In a letter written to Charging Party on August 14, 1998, Kevin Cross, the Superintendent for the Public Works Division, told Charging Party why he had been sent to the Psychologist. The letter

NOR 05041

EXHIBIT 5, PAGE 2

Dennis J. Cook v. City of Norwood
Charge No.: ███

Page 2

outlines specific instances which led Mr. Cross to believe that a determination should be made as to Charging Party's psychological fitness. Of the numerous instances that Respondent documents as justification for the evaluation, three of these specifically refer to Charging Party filing charges with the Commission.

Americans with Disabilities Act- Confidentiality

The evidence also indicates that Respondent posted a memo addressed to "All Public Works Employees" dated May 14, 1996 on the Public Works Bulletin Board. The memo was signed by William J. Miller, the Director of Safety for the City of Norwood. The memo stated that Charging Party had been suspended with pay for the past several weeks pending the completion of medical examinations. The memo stated further that Charging Party will remain on medical leave until he has completed therapy.

If you have any additional information relative to these charges, this information must be in our possession within ten (10) days from the date you receive this letter. Please contact me at (513) 684-2748 if you would like to discuss this case further.

Sincerely,

Keith Good
Investigator

NOR 05042

**IMPORTANT MESSAGE**

FOR Stacy
DATE 10/8/99  TIME 1055 A.M.
M Bob Kelly
OF
PHONE 531-3636
☐ FAX
☐ MOBILE

| TELEPHONED | | PLEASE CALL | |
| CAME TO SEE YOU | | WILL CALL AGAIN | |
| WANTS TO SEE YOU | | RUSH | |
| RETURNED YOUR CALL | | WILL FAX TO YOU | |

MESSAGE Please call to discuss setting up meeting to discuss Settlemnt Agr. Please come to meeting w/ authority to settle. We can keep confidential until after election. He wants to get this settlement within week to 10 days.

SIGNED

TOPS FORM 4005
LITHO IN U.S.A.

EXHIBIT 6, PAGE 1

NOR 05015

ROBERT G. KELLY CO., L.P.A.
4353 MONTGOMERY ROAD
NORWOOD, OHIO 45212
TELEPHONE (513)631-3636
TELECOPIER (513)531-0135

EXHIBIT 7, PAGE 1

October 8, 1999

Timothy A. Garry, Jr.
Law Director
City of Norwood
4645 Montgomery Road
Norwood, Ohio 45212

Re: Dennis J. Cook vs. City of Norwood, et al.
    Charge No ▮▮▮▮▮▮▮▮▮▮

Dear Mr. Garry:

I have received a determination letter from the U.S. Equal Employment Opportunity Commission advising me that the City of Norwood violated various provisions of federal law. In an effort to resolve the matter, the Commission has invited the parties to join with it in reaching a just resolution of this matter. Please advise me within the next seven days of your availability to meet with officials of the EEOC to resolve this matter. I will be prepared to submit a settlement demand on behalf of Mr. Cook on or before October 15, 1999. Any settlement proposal will be made at the meeting with the officials of the EEOC.

Very truly yours,

Robert G. Kelly

db

pc Wilma L. Javey, Director, U.S. EEOC, Cincinnati office
   Dennis J. Cook

NOR 05032

RECEIVED

OCT 11 1999

CITY OF NORWOOD
LAW DIRECTOR'S OFFICE



EXHIBIT 8

**ROBERT G. KELLY CO., L. P. A.**    11-86
4353 MONTGOMERY ROAD
NORWOOD, OH 45212

7042
13-39/420
081

DATE 6/16/01

PAY TO THE ORDER OF  Associates for Psychological Resources    $ 120.00

One Hundred Twenty ———— DOLLARS

**PNCBANK**
PNC Bank, N.A.  070
Cincinnati, OH

FOR Dennis Cook

Robert G. Kelly

⑈000012000⑈

Entry
6-16-01